OPINION
William J. Boyce, Justice
The State indicted appellant Rodney Wayne Allen for the murder of Jonathan Diles,[1] and appellant pled not guilty. Appellant argued at trial that he acted in self-defense. A jury convicted appellant of murder, and the trial court assessed his punishment at 45 years’ imprisonment. Appellant challenges his conviction on grounds that the trial court erred by (1) excluding testimony regarding Diles’s character for violence and aggression; and (2) denying appellant’s request that the State provide him with copies of offense reports in cases in which Diles was charged with crimes of violence. We affirm.
BACKGROUND
An altercation occurred between appellant and Diles, which ended in Diles’s death. According to several witnesses, appellant punched a hole in Diles’s apartment wall; Diles grabbed appellant by the neck; and Diles forced appellant to the outside patio. Appellant fatally shot Diles on the patio.
Appellant argues that the trial court’s allegedly erroneous rulings prevented him from proving that he acted in self-defense when he shot Diles. Appellant does not pinpoint trial court rulings he considers to be in error, but argues his issues generally. The State contends that appellant has not preserved complaints regarding several trial court rulings. We summarize key witness testimony, attorney arguments, and party objections to place appellant’s general contentions into context.
I. The Motion in Limine
The State filed a motion in limine before trial. The trial court granted the State’s motion and instructed the parties and counsel not to allude to, refer to, or in any way bring before the jury any reference regarding Diles’s prior criminal history, bad acts, or character without first approaching the bench.
II. The First Day of Trial
Appellant’s trial counsel approached the bench before giving her opening statement. Counsel informed the trial court that appellant asserted self-defense as a justification for killing Diles. Counsel asked for permission to assert that the evidence would show appellant knew of Diles’s violent nature, and that Diles had a violent past. Counsel argued that this evidence would explain appellant’s apprehension of Diles and tend to show that Diles, rather than appellant, was the first aggressor in the altercation that led to Diles’s death. Counsel specifically requested permission to assert that appellant knew (1) of Diles’s prior convictions for assault and theft;[2] (2) that Diles was a member of the *433 Crips, a violent street' gang; and (3) that Diles was violent toward Sharon Castillo, Diles’s girlfriend and an eyewitness to his death.[3] The trial court denied counsel’s request with respect to appellant’s knowledge of Diles’s prior convictions and gang membership, but granted counsel’s request with respect to appellant’s knowledge of Diles’s violence toward Castillo.
The State gave an opening statement, and appellant’s counsel followed. Appellant’s counsel referred to. Diles by his nickname, “Mellow,” in her opening statement. The State then called the officer dispatched to the scene of Diles’s death. The officer testified briefly, and court adjourned for the day.[4]
III. The Second Day of Trial
Appellant’s counsel approached the bench before the start of the second day of trial. Counsel requested copies of the offense reports “for [Diles’s] prior acts of violence.” She argued: “Specific acts of violence become relevant when the defense raises the issue of self-defense or first aggressor.” The trial court refused counsel’s request.
The State then called Castillo. Castillo testified that she had lived with Diles for five-and-a-half years and considered Diles to be her husband. The State questioned Castillo as follows:
[THE STATE:] Now, while you were living with [Diles], what was /all’s relationship like?
[CASTILLO:] We had our good days and our bad days.
[THE STATE:] Tell me what you mean by that?-
[CASTILLO:] Because he had a drug problem.
[THE STATE:] [Diles] had a drug problem?
[CASTILLO:] Yes, ma’am, he did. Some days he would be okay, and then some days he wasn’t.
[THE STATE:] Do you know what kind of drugs he was using?
[CASTILLO:] He was' on crack cocaine. '
[THE STATE:] Did you see him use crack cocaine around you?
[CASTILLO:] No, he would leave and stay gone for a couple of days -and come home; and I’ll [sic. ] know that’s what he was out there doing. But he never did it around me or in my house.
The State later questioned Castillo as follows:
[THE STATE:] Did: [Diles] have a nickname at all?
[CASTILLO:] Mellow.
[THE STATE:] Mellow. Do you know how he got that nickname? [APPELLANT’S COUNSEL:] Objection, calls for speculation.
THE COURT: You may answer if you know.
[CASTILLO:] Me, ma’am?
THE COURT: Yes.
[CASTILLO:] Because he was just real laid back.
The State questioned Castillo regarding her relationship with appellant. Castillo testified that she met appellant “a while *434 back” through' her son. She testified that appellant was 23 years old at the time of trial, and that he- is 18 years her junior. Castillo stated that she considered appellant to be a son, and that appellant called her “Mama” and called Diles “Pops.” .
Castillo ■ testified that, on March 11, 2012,[5] she entertained Julia Jones at her apartment. Diles and two others, Roderick Brown and Shay McBride, arrived at the apartment by that evening. According to Castillo, appellant called her for a- ride to the apartment. Castillo borrowed a car, picked up appellant, and returned with appellant to her apartment. Castillo, testified that appellant brought a gun.
According to Castillo, Jones went to the bathroom to do her hair at some point in the evening:- Appellant joined Jones in the bathroom, and -the two began to argue. Jones.'and appellant-left the bathroom once and returned. They then left the bathroom a second time. Both were upset.
Jones and appellant entered the living room where Castillo, Diles, Brown, and McBride were sitting. According to Castillo, appellant stated that he wanted to leave. He then punched a hole in the wall. Diles rose from the couch and told appellant to calm down. Appellant and- Jones continued to argue. Diles then grabbed appellant “in a full nelson,”-[6] and told appellant that he would let him go when he calmed down. The apartment door leading to the patio was open. Diles walked appellant outside to the patio while holding him. ’
According to Castillo, Jones then grabbed her keys, exited the apartment, and walked toward the parking lot. Diles released appellant after Jones had walked past. ’ Appellant turned once he was released, “like he was fixin’ to run towards [Jones.] [T]hat’s when [Diles] grabbed [appellant].” Castillo testified that Diles grabbed the back of -appellant’s shirt. She stated that, after Diles grabbed appellant’s shirt, appellant pulled out a gun and shot Diles in the head. Castillo stood next to Diles. She stated that appellant looked at her immediately after shooting Diles and ran away.' Castillo testified that Diles did not have a gun and never attempted to hurt appellant.'
Appellant’s counsel cross-examined Castillo about her relationship with Diles as follows:
[APPELLANT’S COUNSEL:] Now, let’s talk a little bit about some of the statements that you’ve made. Today you told the jury that you- and [Diles] knew each other for five and a half years?
[CASTILLO:] Correct.
[APPELLANT’S ' COUNSEL:] And that you guys had your problems, your good days and your bad days?
[CASTILLO:] Correct.,
[APPELLANT’S COUNSEL:] What do you mean by that?
[CASTILLO:] Like all couples have good days and bad days. You fight sometimes, you argue. You argue and fuss and fight, and sometimes it’s good and sometimes it’s not good. With us it *435 was bad because he was battling an addiction.
[APPELLANT’S : COUNSEL:] And when you fought, he would get physical with you, wouldn’t he?
[CASTILLO:] No, ma’am.
[APPELLANT’S COUNSEL:]. It is your testimony here today that [Diles], you’re telling this jury, that [Diles] was' never physical with you; is that your testimony to this jury today?
[CASTILLO:] If you want to call pushing, yeah, we pushed each other around. As far as black eyes, punching, kicking, no.
[APPELLANT’S COUNSEL:] So, your testimony now is that you would get physical in that you would — he ’would push you and you would push him back?
[CASTILLO:] Yes.
[APPELLANT’S 'COUNSEL:] Is it your testimony that it never got worse than that?
[CASTILLO:] Yes.
The court called the attorneys to the bench immediately after this exchange. There, the following conference ensued:'
THE COURT: All right. And perhaps there was — maybe you misconstrued my ruling. Just so that we’re clear, we talked about opening statements, and we talked about the fact that there may come a time when reputation testimony could become admissible in regards to [appellant’s] knowledge of [Diles’s] reputation. ■
[APPELLANT’S COUNSEL]: Right.
THE COURT: At this time, I have not ruled on [whether] extraneous bad acts on the part of [Diles] are admissible for character conformity or anything else. They’re clearly not relevant to prove character conformity, and I haven’t ruled that they’re admissible for any other purpose. I have granted the [m]otion in [l]imine. While I gave you some latitude in opening statement, now I have not determined this evidence-to be admissible; and it’s not admissible at this time.
[APPELLANT’S COUNSEL]: Okay. I was responding to — on direct examination, she said that they had their good days and bad days.
THE COURT: And she answered that question.
[APPELLANT’S COUNSEL]: And the reason for my questioning at this point was because that answer mislead the jury to make it sound like—
THE COURT: I’m not going to allow you to, I guess, there was a ,[m]otion in [l]imine regarding that. It is still in effect.
Appellant’s counsel continued her cross-examination. Counsel asked Castillo about purported inconsistencies in her statement to police given on March 11, 2012. Counsel referred to Diles as “Mellow” during this exchange. Counsel asked Castillo: “Isn’t it true that you stated [to police] that at that time that Mellow grabbed [appellant]?” Castillo responded: “He grabbed him before [Jones] walked outside.”
IV. The Third Day of Trial
Castillo’s cross-examination carried over into the third day of trial. The prosecutor and appellant’s counsel approached the bench before trial resumed. Appellant’s counsel asked the court to admit evidence of Diles’s character to rebut Castillo’s testimony that Diles was nicknamed “Mellow” and was a “laid-back individual.” Appellant’s counsel argued that Castillo’s testimony “should have opened the door for rebuttal character evidence.” Appellant’s-counsel did not specify the rebuttal evidence she wished to introduce. The trial *436 court denied counsel’s request. Appellant then finished cross-examining Castillo.
The State next called Alfonso Pineda, who lived above Diles’s and Castillo’s apartment. Pineda testified through an interpreter that he woke up at about 5:00 a.m. on March 11, 2012, because he heard screaming outside his apartment. Pineda opened his window and saw two men and a woman arguing. Pineda testified:
They were arguing and the guy, the aggressor, was next to the wall. They were arguing; I don’t know why, and the man who died withdrew from them. So, the other guy moved from where the lady was, and he encountered the other one. And so he also walked around and left. And then the other man also got out and he yelled at him, the one who died, he said, “What the hell, n-,’ that’s all I heard. And then he came back and he pulled out the pistol and shot at him.
Pineda testified on cross-examination that, at one point, he lost sight of the shooter. Pineda then saw the shooter come back, stand in front of Diles, pull out a gun, and fire. Appellant’s counsel asked Pineda: “[P]rior to this shooting, it is your testimony that neither one of them touched each other?” Pineda answered: “There were not any blows. The lady was the one who was pushing the guy, but I don’t know why.”
The State next called Brown. Brown testified that he was at Castillo’s and Diles’s apartment on March 11, 2012. Brown identified Diles in a photograph stating “[t]hat’s Mellow, I only know him by nickname.” Brown referred to Diles as “Mellow” throughout the examination.
Brown testified that appellant argued with someone on the phone while appellant was at the apartment. According to Brown, appellant became distraught and punched the apartment wall. Diles then grabbed appellant from behind and forced him outside. Brown stated that Diles “had [appellant] around his neck, like grabbed him from behind.” According to Brown, appellant “was asking [Diles] why are you handling me this rough?” Brown demonstrated the hold Diles used on appellant. Brown called the hold “a full nelson.” Brown testified that he stayed inside the apartment after Diles removed appellant. Brown heard two gunshots. He then exited the apartment and saw Diles lying dead outside.
The State called Dr. Moma Gounsolin, who performed the autopsy on Diles’s body on March 12, 2012. Dr. Gounsolin testified that Diles died of a gunshot wound to the head. The trial court admitted Dr. Gounsolin’s autopsy report into evidence. The report states that the word “CRIMINAL” is tattooed on Diles’s left forearm, and the words “MIND OF A GANGSTA” are tattooed on his right hand. The autopsy report lists trace amounts of cocaine, cocaine metabolites, and ethanol found in Diles’s blood.
Appellant’s counsel approached the bench before Dr. Gounsolin’s cross-examination. Counsel asked the court for permission to question Dr. Gounsolin about Diles’s tattoos. The trial court denied counsel’s request, stating: “[The motion in limine] remains in effect.”
' The State rested. The State and appellant’s counsel approached the bench. Appellant’s counsel asked the court for permission to call a witness the next day who would testify that Castillo told the witness a different version of events. The trial court stated that it would allow the witness to testify regarding Castillo’s inconsistent statements. Appellant’s counsel told the court that the witness also had personal knowledge that Diles abused Castillo and that Diles smoked crack in the apartment *437 he shared with Castillo. Appellant’s counsel asked the court for permission to question the witness about Diles’s abuse and drug - use at the apartment: The trial court denied counsel’s request, stating that the extraneous acts were irrelevant and, even if relevant, they were unfairly prejudicial. The court adjourned for the day.
V. The Fourth Day of Trial
Appellant testified on the fourth day of trial. Appellant’s counsel questioned appellant as follows:
[APPELLANT’S COUNSEL:] Why did you fire those shots on March 11th, 2012?
[APPELLANT:] I was scared for my life.
[APPELLANT’S COUNSEL:] Why were you scared for your live [sic]?
[APPELLANT:] Because [Diles] was choking me. He was choking me, and he wouldn’t let me go, and he reached for my gun.
On cross-examination, appellant testified that he brought a gun to Diles’s and Castillo’s apartment. He testified that he punched the apartment wall twice. He stated that Diles then grabbed him around the neck with his arm. , Appellant asked Diles to let him go. According to appellant, he was unable to speak. He testified that he could not breathe and that he tried to get loose from Diles. • Appellant and Diles then “started to tussle.” At some point, the struggle moved outside. Neither man was on his feet. Appellant testified: “When I kind of got loose from [Diles], he reached for my gun.” Appellant could not remember how he got loose from Diles. Appellant stated: “I shot the gun when [Diles] let — when I was trying to get away from him, I shot the gun when I was able to grab it.” Diles then, released appellant, and appellant fled the scene.
Appellant testified on redirect that, after he punched the wall, Diles came from the back of the apartment to the living room. Appellant testified: “[Diles] grabbed me around my neck. He didn’t even say anything to me. He just immediately grabbed me.” Appellant demonstrated the grasp to the jury. ' Appellant’s counsel asked appellant: “What is the reason that you shot Jonathan [Diles] that night?” Appellant responded: “He reached to grab for my gun.”
Appellant’s counsel then approached the bench, where the following conference ensued: '
[APPELLANT’S COUNSEL:] We have now clearly raised the issue of self-defense.' ' I would ask that now I be able to go into the relationship between the parties and what they knew in regards to—
THE COURT:' Between the Defendant and the victim?
[APPELLANT’S COUNSEL:] Yes.
THE COURT: Any extraneouses?
[APPELLANTS COUNSEL:] No, So, what about the personal knowledge of the victim’s opinion and character?
THE COURT: At this point, based on the evidence that has been raised, if you want to talk about the Defendant’s relationship with the victim, you may do that.
Appellant’s counsel then asked appellant if he had a prior relationship with Diles. Appellant answered:. “Yes.” Counsel asked appellant if he knew Diles “to be a Crip.” The State objected. The court called the parties to the bench and stated that appellant’s counsel had violated the motion in limine by asking appellant whether he knew Diles to be a Crip. Appellant’s counsel responded:
You stated to me that the prior relationship between [appellant] and [Diles] I *438 can go into: The prior relationship between them is that.there would be several times that [Castillo] would be abused by [Diles]. He would — [Castillo] would call [appellant] to come over there to protect her. [Appellant] would come. When he would get there, [Diles] would — there would be other Crips outside. He would act as though, you know, what are you here for, this, that and the other. And so the prior relationship between the parties is that he knew that he was a Crip. He knew that he was a [sic] abusive. He knew that he would have to come over there and protect [Castillo]. That’s the relationship that he knew, which formed his basis for his opinion arid his state of mind at the time he pulled the trigger.
The court responded that it would not allow testimony regarding Diles’s alleged gang membership and Diles’s relationship with Castillo. The court determined that the prejudicial effect of the proposed testimony outweighed its relevance, if any.
Appellant’s counsel objected on the record. She asserted that the proposed testimony regarding “the prior specific acts of violence” should be admissible to explain appellant’s defensive state of mind when he shot the gun.- Additionally, counsel'asserted that th'e proposed testimony would explain Diles’s ‘ “ambiguously aggressive” conduct. Appellant’s counsel stated: “[I]t’s ambiguous as to exactly what the purpose was for [Diles] grabbing [appellant] and' what manner that [Diles] grabbed him.”
The trial court again refused appellant’s request to elicit testimony regarding Diles’s specific bad acts. The court stated: “It is- unambiguous with regards [to appellant’s] recitation of how this offense occurred. Therefore, I find that the specific bad acts that you are attempting to elicit do nothing other than to attempt to show character conformity on the part of [Diles].”
The State reexamined appellant. Appellant testified: “The only reason I- even attempted, to grab [the gun] is because he reached for it.”
Appellant’s counsel next called Castillo’s half-sister, Creóla Borner. Borner testified that, in late March or April 2012, Castillo visited Borner and told her about the night Diles died. According to Borner, Castillo stated that appellant and Diles were fighting and that “Mellow had [appellant] from behind and he was trying to get to his gun and [appellant] had got to it first.”
Appellant’s counsel approached the bench after Borner testified. Counsel again requested that the court admit testimony regarding Diles’s character and reputation because appellant had raised the issue of self-defense. The court denied counsel’s request.
Appellant’s counsel made an offer of proof before closing arguments.[7] She stated:
If [appellant was] allowed to bring in the opinion and reputation character of [Diles], [appellant] would have testified to the fact that he knew that [Diles] was a Crip. Also ... we would have, the autopsy report that was entered into evidence, we would have highlighted for the jury the fact that he had Crip tat *439 toos on his body.... [Appellant] would testify to the fact that on numerous occasions [Castillo] called him to pick her up after [Diles] had abused her, blackened her eye, bruised her as well as beat her up and pulled out her hair. [Borner] ... would have testified to the fact that she- personally, while living ■with [Diles] and [Castillo] personally witnessed [Diles] in a very violent nature abuse [Castillo] ... drag, her downstairs, that when they would try to take him off of her that he. would pull patches of hair out of her head such that now she has, to wear a wig and that she witnessed, in fact, where [Castillo] would call [appellant] to come pick her up after being abused by [Diles], Also ... there was testimony elicited by [Castillo] that stated she has never witnessed [Diles] smoke crack in her home. I would have impeached that statement because when [Borner] lived with' [Castillo] and [Diles] she testified she and [Castillo] personally witnessed [Diles] smoke crack in their home. In addition to that, [Castillo] also stated ... that their relationship was a good relationship. They had their good days and bad days, and the most they ever did was push each other. I could have impeached her with that same evidence in regards to the violent nature and the violence that occurred between the two of them had I been able to offer the witness — through this evidence through [appellant] as well as [Borber],
The parties presented closing argument on the fourth day of trial. The court instructed the jury on the law, including the law of self-defense. Appellant’s counsel argued during her closing argument, that appellant was justified in killing Diles because he acted in self-defense. Counsel argued: “When you grab a man in the fashion that ... [Diles] grabbed [appellant], your intentions are clear. He wasn’t punching holes in the wall at that time, so the only reason that he grabbed him at that point was to harm him.” Counsel stated: “No witness told you that [appellant] was .starting to beat [Diles] up. No witness told you that he was trying to harm him, only that he was trying to get away.” Counsel argued that appellant shot Diles because Diles went for appellant’s gun during their struggle.. Counsel asserted:. “[Appellant] thought that if [Diles] got the weapon before he did that [Diles] was going to go ahead and finish it off.”
The State argued that appellant’s version of events was not credible. The State urged the jury to accept Castillo’s and Pineda’s versions of events, which described appellant shooting Diles at a close range while standing, and not while struggling with Diles. The State argued that Castillo’s and Pineda’s testimony established that appellant was not acting in self-defense when he shot Diles.
The jury found appellant guilty of murder, and the trial court assessed appellant’s punishment at 45 years’ imprisonment. . Appellant timely appealed.
Exclusion op Evidence
In his first three issues, appellant contends that the trial court abused its discretion by excluding testimony regarding (1) Diles’s “repeated physical abuse of’ Castillo; (2) Diles’s “prior convictions for the offenses of robbery and assault;” and (B) appellant’s knowledge “that [Diles] was a member of the Crips, a violent street gang.” Appellant’s three issues are each tied to a category of excluded evidence. Appellant argues his three issues together. Appellant argues that the trial court abused its discretion by excluding the evidence because the evidence was admissible (1) to support his theory of self-defense; (2) to test Castillo’s credibility; and (3) to rebut a false impression of Diles’s peaceable character. Additionally, appellant ar *440 gues that the excluded evidence was not unfairly prejudicial or otherwise subject to exclusion pursuant to Texas Rule of Evidence 403.
Appellant contends that reversal is warranted because the trial court’s eviden-tiary errors deprived him of his constitutional right to present a complete defense. See Tex. R.App. P. 44.2(a).[8] Alternatively, appellant argues that the trial court’s errors affected his substantial rights. See Tex. R. App. P. 44.2(b).
The State counters appellant’s arguments on an issue by issue basis, examining each category of excluded evidence. The State argues that the trial court acted within its discretion when it excluded testimony relating to Diles’s treatment of Castillo and appellant’s knowledge of Diles’s gang membership. The State argues that this evidence was irrelevant and would have shown only that Diles acted in conformity with a violent character. The State also argues that appellant did not preserve error with respect to testimony regarding Diles’s prior convictions for assault and robbery.
We first discuss, whether appellant preserved error regarding evidence of Diles’s prior convictions; we hold that he did not and overrule issue’two.
We then address, in turn, appellant’s arguments that testimony regarding Diles’s treatment of Castillo and gang membership was admissible (1) to support his theory of self-defense; (2) to test Castillo’s credibility; or (3) to rebut a false impression of Diles’s peaceable character. We determine that the excluded testimony was not admissible under appellant’s theories, was properly excluded at the trial court’s discretion, or that a complaint of exclusion under the argued theory of admissibility was not preserved for appeal. See Tex. R. App. P. 33.1; Reyna v. State, 168 S.W.3d 173, 177 (Tex.Crim.App.2005) (“[I]t is not enough to tell the judge that evidence is admissible. The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible.”). We overrule issues one and three.[9]
I. Error Preservation at Trial
In his second issue, appellant contends that the trial court erred in excluding testimony regarding Diles’s prior convictions for assault and robbery. The State argues that appellant did not preserve error regarding issue two because appellant never attempted to introduce evidence of Diles’s convictions at trial and the trial court never ruled on the admissibility of such evidence. Appellant points to two locations in the record that, he asserts, establish preservation of error at trial. We consider the locations in turn.
A. The Bench Conference before Opening Statements
*441 Appellant asserts that, during the bench conference before opening statements, his counsel requested permission to elicit evidence regarding appellant’s knowledge of Diles’s prior convictions. Appellant argues that his counsel’s request, made outside the presence of the jury, preserved error. See Tex. R. Evid. 103(a)(1), 60 Tex. B.J. 1130 (1998, superseded 2015) (“When the court hears objections to. offered evidence out of the presence of the jury and rules that such evidence be admitted, such, objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections.”).[10]
At the bench conference, the parties and the court discussed the State’s motion in limine and which subjects the court would allow appellant’s counsel to discuss during her opening statement. Appellant’s counsel asserted that she anticipated the evidence at trial would show that appellant knew that Diles previously had been convicted for assault and theft. Counsel requested that she be allowed to assert appellant’s knowledge of Diles’s convictions during her opening statement. The State opposed counsel’s request, stating: “I believe that it will be premature to go into [Diles’s] past without seeing the testimony develop.” The trial court ruled: “For purposes of opening statements, I am going to grant the State’s [m]otion in [l]imine with regards to the prior convictions of [Diles] ... along with the information regarding [Diles’s] gang affiliation.” Additionally, the court prohibited appellant’s counsel from asserting during opening that appellant had knowledge-of Diles’s prior convictions.
Appellant’s counsel asked the court: “[J]ust so that I’m clear, we can’t bring up the fact that [appellant] knew that [Diles] was a Crip.” The court responded: “[Absent additional information that may or may not be developed during the trial, that’s correct. Since I haven’t ruled on the admissibility of that evidence, then at this point I’m not going' to allow you to talk to the jury about- it.” Appellant’s counsel did not request clarification regarding the court’s ruling prohibiting her from asserting appellant’s knowledge of Diles’s prior convictions.
Texas Rule of Appellate Procedure 33.1(a)(1) provides that, to preserve error for appellate review, a party must object in the trial court and state “the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context.” While no “hyper-technical or formalistic use of words or phrases” is required in order for an objection to preserve error, the objecting party nonetheless must “ ‘let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position.to do something about it.’ ” Pena v. State, 285 S.W.3d 459, 464 (Tex.Crim.App.2009) (quoting Lankston v. State, 827 S.W.2d 907, 908-09 (Tex.Crim.App.1992)). Rule 33.1 also requires that the trial court rule on the request, objection, or motion, either expressly or implicitly, or refuse to rule on the request, objection, or motion, and the complaining party to'have objected to the refusal. Tex. R. App. P. 33.1(a)(2).
*442 On this record, we determine that, during the bench conference prior to opening statements, appellant, did not request or receive a ruling on the admissibility of testimony regarding Diles’s prior convictions for assault and robbery. Appellant’s counsel argued against the State’s motion in limine. She further requested that she .be allowed to assert appellant’s knowledge of Diles’s criminal convictions during her opening statement. The trial court denied counsel’s request. See Norton v. State, 564 S.W.2d-714, 718 (Tex.Crim.App. [Panel Op.] 1978) (the character and extent of a defendant’s opening statement are subject to the control of the trial court). The trial court did not clarify its ruling with respect to Diles’s prior convictions; however, it stated, with respect to its ruling prohibiting -counsel' from discussing Diles’s gang membership: “I haven’t ruled on the admissibility of that evidence.”
We hold that appellant did not preserve error regarding the admissibility of testimony as to Diles’s prior convictions because appellant’s counsel did not request or receive a ruling on the admissibility of such testimony at the bench conferencé prior to opening statements. See Tex. R. App. P. 33.1; cf. Warner v. State, 969 S.W.2d 1, 2 (Tex.Crim.App.1998) (“[W]e have held that a ruling on a State’s motion in limine that excludes defense evidence is subject to reconsideration throughout trial and that to preserve error an offer of the evidence must be made at trial.”).
B. Appellant’s Redirect Examination
Appellant directs our attention to a second location in the record where he asserts that his counsel preserved error. The record from the fourth day of trial shows the following exchange during appellant’s redirect examination:
[APPELLANT’S COUNSEL:] Did you have a prior relationship with [Diles]? .
[APPELLANT:] Yes, ma’am.
[APPELLANT’S ' COUNSEL:] Did you know him to be a Crip?
[APPELLANT:] Yes, ma’am.
[THE STATE]: Your Honor, I would object.
Appellant’s counsel and the State approached the bench. The trial court stated that appellant’s counsel had violated the motion in limine. Appellant’s counsel re'quested permission to elicit testimony regarding Diles’s “prior specific acts of violence” to explain appellant’s state of mind at the time he shot Diles and to clarify whether appellant or Diles was the first aggressor. Counsel argued for the admissibility of testimony regarding Diles’s gang membership and violence toward Castillo; counsel did not ask permission to question appellant regarding Diles’s criminal convictions. The trial court denied counsel’s request.
In addition to Texas Rule of Appellate Procedure 33.1, the complaining party must comply with Texas Rule of Evidence 103(a)(2) to preserve error regarding a trial court’s decision to-exclude evidence. This rule. requires making an “offer of proof,” unless the substance of the evidence was apparent from the context within which questions were asked. Tex. R. Evid. 103(a)(2), 60 Tex. B.J. 1130 (1998, superseded 2015); see Mays v. State, 285 S.W.3d 884, 889 (Tex.Crim.App.2009); see also Tex. R. App. P. 33.1; Martinez v. State, 91 S.W.3d 331, 336 (Tex.Crim.App.2002) (Texas Rule of Appellate Procedure 33.1 and Texas Rule of Evidence 103 require the party complaining on appeal about a trial court’s exclusion of evidence to “have done everything necessary to bring to the judge’s attention the evidence rule or statute in question and its precise and proper application to the evidence in question.”) (internal quotations *443 and brackets omitted). Texas Rule of Evidence 103(a)(2) provides: “Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and ... the substance of the evidence was made known-to the court by offer, or was apparent from the context’ within which questions were asked.” “The offer of proof may consist of a concise statement by counsel, or it may be in question-and-answer form.” Mays, 285 S.W.3d at 889. If the offér of proof is made in the form of a statement, the proffer, “‘must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is- relevant and admissible.’ ” Id, at 890 (quoting Warner, 969 S.W.2d at 2).
The record shows that appellant’s counsel made an offer of proof by summarizing testimony that she wished to elicit from appellant as to Diles’s physical abuse of Castillo and Diles’s gang membership. Counsel did not make an offer of proof as to Diles’s prior criminal convictions. It is not apparent from counsel’s questions to appellant, before the bench conference, that counsel intended to question appellant regarding Diles’s criminal history.
We hold that appellant did not preserve a complaint regarding the exclusion of evidence as to Diles’s prior criminal convictions because appellant did not make an offer of proof regarding such testimony and the substance of the testimony was not otherwise apparent .from the context of appellant’s redirect examination. See Tex. R. Evid. 103(a)(2); Warner, 969 S.W.2d at 2; see also Tex. R. App. P. 33.1(a); Leyba v. State, 416 S.W.3d 563, 574-75 (Tex.App.-Houston [14th Dist.] 2013, pet.- ref d) (defendant in a murder case did not preserve error regarding the exclusion of victim’s criminal history because defendant did not .request a specific ruling regarding the admissibility of victim’s criminal history and defendant did not attempt to introduce evidence of victim’s criminal history during trial). ”' ‘
. Appellant does not argue .that additional locations in the record establish preservation, and we have found no instance of error preservation during our independent review of the record. We hold that appellant failed to preserve error regarding the trial court’s exclusion of testimony as to Diles’s prior convictions for assault and robbery. We overrule appellant’s second issue.
II. Admissibility of Evidence
Appellant contends that the trial court erred in excluding evidence regarding Diles’s physical abuse of Castillo (issue one) and appellant’s knowledge of Diles’s gang membership (issue three). Appellant asserts three theories under, which he contends this evidence should have been admissible: (1) to support appellant’s theory of self-defense; (2) to test Castillo’s credibility; and (3) to rebut a false impression of Diles’s peaceable character. We state the applicable standard of review and then address appellant’s theories of admissibility in turn.
A. Standard of Review
A trial court’s decision to admit or exclude evidence is reviewed under an abuse of discretion standard. Torres v. State, 71 S.W.3d 758, 760 (Tex.Crim.App.2002). We will not reverse a trial court’s ruling unless that ruling falls outside the zone of reasonable disagreement. See id. We uphold the trial court’s ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. See Willover v. State, 70 S.W.3d 841, 845 (Tex.Crim.App.2002). Additionally, we must review the trial court’s *444 ruling in light of what was before the court at the time the ruling was made. ■ See id.
B. Self-Defense
In general, evidence of a person’s character may not be used to prove that the person “behaved in a particular way at a given time.” Tate v. State, 981 S.W.2d 189, 192 (Tex.Crim.App.1998); see Tex. R. Evid. 404(a), 60 Tex. B.J. 1134 (1998, superseded 2015). However, this limit on character evidence is not absolute. Texas Rule of Evidence 404(a)(2) provides that a defendant in a homicide prosecution who raises the issue of self-defense may introduce evidence of the victim’s character trait for violence to demonstrate that the victim was, in fact, the first aggressor. Tex. R. Evid. 404(a)(2), 60 Tex. B.J. 1134 (1998, superseded 2015); see Ex parte Miller, 330 S.W.3d 610, 619 (Tex.Crim.App.2009); Torres, 71 S.W.3d at 760.[11] A witness may testify about a victim’s violent character only through reputation and opinion testimony under Rule 405(a). See Tex. R. Evid. 405(a), 60 Tex. B.J. 1134 (1998, superseded 2015); Ex parte Miller, 330 S.W.3d at 619.[12]
A defendant also may introduce evidence under Rule 404(b) of a “victim’s prior specific acts of violence when offered for a non-character purpose — such as his specific intent, motive for an attack on the defendant, or hostility — in the particular case.” Ex parte Miller, 330 S.W.3d at 620; see Tex. R. Evid. 404(b), 60 Tex.B.J. 1134 (1998, superseded 2015). “As long as the proffered violent acts explain the outward aggressive conduct of the deceased at the time of the killing, and in a manner other than demonstrating character conformity only, prior specific acts of violence may be admitted even though those acts were not directed against the defendant.”- Torres, 71 S.W.3d at 762. “The proper predicate for the specific violent prior act by the deceased is some act of aggression that tends to raise the issue of self-defense, which the violent act may then help clarify.” Torres v. State, 117 S.W.3d 891, 895 (Tex.Crim.App.2003) (emphasis in the original).
Finally, a defendant may offer reputation or opinion testimony or evidence of specific prior acts of violence by the victim to show the “reasonableness of [the] defendant’s claim of apprehension of danger” from the victim. Ex parte Miller, 330 S,W.3d at 618. This purpose invokes Rule 404(b) because the evidence is offered to show the defendant’s own self-defensive state of mind and the reasonableness of that state of mind. Id. at 618-19; Mozon v. State, 991 S.W.2d 841, 846 (Tex.Crim.App.1999), The defendant must show that he was aware of the victim’s specific.acts for the evidence to be admissible for this purpose. Torres, 71 S.W.3d at 760 n.4.[13]
Appellant argues that he was entitled to introduce evidence of “Diles’[s] character *445 for violence via the specific acts he proffered” to explain Diles’s “ambiguous conduct in grabbing Appellant by the neck.” According to appellant, the evidence of Diles’s prior bad acts was probative of whether appellant or Diles was ■ the first aggressor. Additionally, appellant asserts that he offered the evidence to prove “his own self-defensive state of mind and the reasonableness of that state of mind.”
Appellant does not specify how each of the proffered acts contributes to his theory of self-defense, nor does appellant analyze the trial court’s rulings in light of what was before the court at the time the ruling was made. See Willover, 70 S.W.3d at 845; Hoyos v. State, 982 S.W.2d 419, 422 (Tex.Crim.App.1998) (“In determining the validity of a trial court’s decision to exclude evidence, we examine the record as it appeared at the time of the trial court’s ruling.”).
We first address whether the trial court abused its discretion in excluding the proffered evidence to show whether appellant or Diles was the first aggressor. We examine admissibility as it relates to first aggressor under Rules 404(a)(2) and 405, and then we examine the issue under Rule 404(b). After considering admissibility as it relates to first aggressor, we turn to consider whether the trial court abused its discretion under Rule 404(b) by excluding the evidence as offered to show appellant’s apprehension of danger from Diles.
1. First aggressor
Appellant asserts that Diles’s intent in grabbing appellant by the neck was inherently ambiguous because appellant’s testimony that Diles grabbed him in a harmful manner contradicted Castillo’s and Brown’s testimony that Diles grabbed appellant to control his outburst and to calm him down. Appellant argues that this ambiguity placed in question whether Diles or appellant was the first aggressor.
We assume without deciding that the issue of first aggressor was legitimately in dispute.[14]
We determine that the trial court did not abuse its discretion in excluding the proffered evidence when the evidence was offered to show Diles’s character trait for violence. A defendant who raises the issue of self-defense may introduce evidence of a victim’s character trait for violence pursuant to Rule 404(a)(2) to show that th.e victim was, in fact, the first aggressor, but the defendant may do so only through reputation and opinion testimony under Rule 405(a). See Tex. R. Evid. 404(a)(2), 405(a); Ex parte Miller, 330 S.W.3d at 619. Testimony regarding Diles’s alleged physical abuse of Castillo (issue one) and testimony that appellant knew that Diles was a member of the Crips (issue three) is not reputation or opinion testimony. Cf. Tibbs v. State, 125 S.W.3d 84, 89 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (gang membership *446 evidence may be admissible under Rule 404(b) to show bias, motive, intent, or to refute a defensive theory).[15]
We also determine that the trial court did not err in excluding the proffered evidence when offered to establish Diles’s status as first aggressor through specific instances of past conduct'. Under Rule 404(b), a victim’s prior'ácts of violence also may be admissible to clarify the issue of first aggressor if the proffered act explains the victim’s ambiguously aggressive conduct. See Torres, 117 S.W.3d at 895; Torres, 71 S.W.3d at 762. The victim’s prior act may be admissible to explain, among other things, the victim’s specific intent, motive, or hostility in a particular case. See Tex. R. Evid. 404(b); Ex parte Miller, 330 S.W.3d at 620; see, e.g., Torres, 117 S.W.3d at 896-97 (defendant was entitled to offer evidence that, several days before he shot victim, victim had climbed through his ex-girlfriend’s aunt’s window and threatened the aunt and her children; this evidence was relevant to show that victim had a specific motive or intent to be the first aggressor when he climbed through his ex-girlfriend’s window several days later and defendant shot him); Tate, 981 S.W.2d at 193 (evidence that victim stated to defendant’s aunt, several months prior to his death, that he would Mil defendant was admissible to show victim’s state of mind on the night he arrived at defendant’s home and defendant stabbed him).[16]
Appellant has not explained how the proffered evidence of Diles’s physical abuse, of Castillo and appellant’s knowledge of Diles’s gang membership explain Diles’s aggressive conduct, and in a manner other- than one that only demonstrates character conformity.- See Torres, 71 S.W.3d at 761-62.[17]
*447 Appellant’s trial counsel proffered the following statement at the bench conference during appellant’s redirect examination: '
“The prior relationship between [appellant and Diles] is that there would be several times that [Castillo] would be abused by [Diles]. He would — [Castillo] would call [appellant] to come over there to protect her. [Appellant] would come. When he would get there, ’ [Diles] would — there would be other Crips outside. He would act as though, you know, what are you here for, this, that and the other. And so the prior reía-' tionship between the parties is that he knew that he was a Crip. He knew that' he was a [sic]- abusive. He knew that he would have to come over there and protect [Castillo]. That’s the relationship that he knew, which formed his basis for his opinion and his state of mind at the time he pulled the trigger.
Appellant’s trial counsel later asserted that the proffered evidence clarified Diles’s ambiguous purpose and manner in grabbing appellant. Counsel did not assert that Diles had any ill will toward appellant for responding to Castillo’s calls for help, nor did counsel otherwise connect the proffered evidence of Diles’s physical abuse of Castillo and appellant’s knowledge of Diles’s gang membership to Diles’s state of mind.
. On this record, we hold that the trial court acted within its discretion in excluding evidence of Diles’s physical abuse of Castillo (issue one) and of appellant’s knowledge that Diles was a member of the Crips (issue three), when offered to" establish Diles’s status as first aggressor through specific instances of past conduct, because appellant did "not establish that the proffered evidence clarified whether appellant or Diles was the first aggressor, and did so in a manner other than demonstrating Diles’s conformity with a violent character only. See Tex. R. Evid. 404(b); Torres, 71 S.W.3d at 762; Hayes v. State, 124 S.W.3d 781, 786 (Tex.App.-Houston [1st Dist.] 2003), aff'd, 161 S.W.3d 507 (Tex.Crim.App.2005) (trial court properly excluded evidence that victim confronted an individual with a gun after being insulted - because there was no evidence that victim insulted defendant or that victim had any animosity toward defendant).
2. Appellant’s apprehension of danger
A murder defendant arguing self-defense also may offer evidence, pursuant to Rule 404(b), that he was aware of the victim’s specific acts of violence to show the defendant’s reásonáble apprehension of danger from the victim. See Tex. R. Evid. 404(b); Ex parte Miller, 330 S.W.3d at 618; Torres, 71 S.W.3d at 760 n. 4; Thompson v. State, 659 S.W.2d 649, 653 (Tex.Crim.App.1983), superseded by rule, Tex. R. Evid. 404, as recognized in Mozon, 991 S.W.2d at 845-46.
Thé Texas Penal Code provides, with certain exceptions: “[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary, to protect the actor against the other’s use or attempted use of unlawful force.” See Tex. Penal Code Ann. § 9.31(a) (Vernon 2011). Deadly force in self-defense is justified when a person is justified in using force pursuant to section 9.31 and" ’“the actor reasonably believes the deadly force is immediately necessary ... to protect the actor against the other’s use or attempted use of unlawful deadly force; or .;. to prevent the other’s imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual’assault, *448 robbery, or aggravated robbery.” Id. § 9.32 (Vernon 2011).
Appellant testified that he feared for his life when Diles was choking him. Appellant stated that he could not breathe. Appellant’s counsel asked appellant: “What is the reason that you shot Jonathan [Diles] that night?” Appellant responded: “He reached to grab for my gun.” During cross-examination, appellant stated: “The only reason I even attempted to grab [the gun] is because [Diles] reached for it.” Diles’s autopsy report lists trace amounts of cocaine, cocaine metabolites, and ethanol found in Diles’s blood after his death. According to the toxicologist who was called by appellant, the levels of cocaine and cocaine metabolites in Diles’s blood indicated “binge-style” cocaine use over many hours immediately before his death; the ethanol level in Diles’s blood indicated alcohol intoxication at a level over twice the legal limit. At these levels, a person would be influenced by the substances to “lower inhibitions,” “make rash decisions,” and “be more in an agitated state.”
“A trial court is within its discretion to exclude prior violent acts if the victim’s conduct was plainly aggressive and no explanation is necessary to show that the defendant reasonably feared for his life.” Smith v. State, 355 S.W.3d 138, 150-51 (Tex.App.-Houston [1st Dist,] 2011, pet. ref'd) (citing Torres, 71 S.W.3d at 762). Diles’s autopsy report suggests that Diles was significantly intoxicated when he grabbed appellant; he may have experienced lowered inhibitions, made rash decisions, and been in an agitated state. Appellant’s description of Diles’s conduct in grabbing appellant around the neck without saying anything, choking appellant until he could not breathe, and reaching for appellant’s gun approaches conduct that was unambiguously aggressive. If Diles’s conduct was unambiguously aggressive and needs no explanation to show appellant’s reasonable fear for his life, then the trial court arguably acted within its discretion in excluding the proffered evidence because it was irrelevant apart from its tendency to show Diles’s conformity with a violent character. See Tex. R. Evid. 404(b); Ex parte Miller, 330 S.W.3d at 618-19; Mozon, 991 S.W.2d at 846; Smith, 355 S.W.3d at 150-51 (trial court acted within its discretion to exclude evidence that defendant knew appellant had previously stabbed another individual because victim’s acts, as testified to by defendant, of pulling a knife and stabbing defendant were unambiguously aggressive and needed no explanation to show that defendant reasonably feared for his life); London v. State, 325 S.W.3d 197, 206 (Tex.App.-Dallas 2008, pet. refd) (trial court acted within its discretion to exclude evidence of victim’s gang affiliation and terrorization of neighborhood because victim’s unambiguously aggressive act, as testified to by defendant, of shooting at defendant’s car needed no explanation and because the proffered evidence did nothing more than show victim’s conformity with a violent character).
Nevertheless, assuming for the sake of argument that Diles’s conduct was ambiguous, the trial court acted within its discretion in excluding the proffered evidence because the evidence was not probative of the reasonableness of appellant’s fear for his life. See Tex. R. Evid. 404(b); Ex paite Miller, 330 S.W.3d at 618; Thompson, 659 S.W.2d af 654 (upholding trial court’s decision to exclude evidence of victim’s prior convictions where the convictions were not “probative of the reasonableness of [defendant’s] belief her use of force was necessary within the meaning of [Texas Penal Code sections] 9.31 and 9.32”). Appellant does not explain how the proffered evidence of Diles’s physical *449 abuse of Castillo and Diles’s gang membership clarifies Diles’s conduct as deadly conduct justifying appellant’s use of deadly force in self-defense. See Tex. Penal Code Ann. §§ 9.31, 9.32. Among other things, appellant has not explained how the proffered evidence affected his belief that the use of deadly force was immediately necessary to protect against Diles’s use or attempted use of 'deadly force. See id. §§ 9.31, 9.32. Diles’s alleged abuse of Castillo and Diles’s gang membership did not involve deadly weapons or chokeholds. The altercation between Diles and appellant did not concern Diles’s treatment of-Castillo and was not asserted to be gang-related.
On this record, we conclude that evidence pertaining to Diles’s physical abuse of Castillo and Diles’s gang membership had no clear bearing on the altercation between appellant and Diles such that the proffered evidence showed appellant’s reasonable fear for his life justifying deadly force in self-defense. Therefore, we hold that the trial court acted within its discretion in excluding testimony regarding Diles’s physical abuse of Castillo (issue one) and appellant’s knowledge that Diles was a member of the Crips (issue three) because this evidence pertained solely to character conformity. See id. §§ 9.31, 9.32; Tex. R. Evid. 404(b); Smith, 355 S.W.3d at 155 (evidence of victim’s gang-related tattoos properly excluded as irrelevant to the issue of self-defense, and unfairly prejudicial where the altercation leading to victim’s death was not gang-related); cf. Thompson, 659 S.W.2d at 654 (victim’s pri- or convictions for. unlawfully carrying a weapon were not probative of the reasonableness of defendant’s belief that her use of deadly force was necessary for self-defense where victim approached defendant without showing a gun, defendant never testified that she thought victim was armed, and defendant stated that she shot victim because she “was scared of him”).
We hold that the trial court did not abuse its discretion by excluding'-testimony regarding Diles’s physical abuse of Castillo (issue one) and appellant’s knowledge that Diles was a member of the Crips (issue three) offered in support of appellant’s self-defense theory.
C. Castillo’s Credibility
’Next, appellant contends that the trial bourt abused its discretion by excluding the proffered evidence when offered to challenge Castillo’s credibility.
Appellant asserts in his brief: ,.
Castillo’s denials that Diles did not physically abuse her or smoke crack, cocaine in front of her or in their home stands in stark contrast with the testimony of [ajppellant and [Borner]. It is difficult to imagine a situation where the accused would be more entitled to have the jury gauge the credibility of a key prosecution witness, by confronting and cross-examining that witness’s patently inconsistent statements in the crucible of cross-examination, than in this case.[18]
We analyze appellant’s argument as challenging the trial court’s ruling limiting appellant’s cross-examination of Castillo.[19],
*450 The record shows that- appellant’s' counsel cross-examined Castillo about her relationship with Diles as follows:
[APPELLANT’S COUNSEL:] Now, let’s talk a little bit about some of the statements that you’ve ‘ made. Today you told the’ jury that you and [Diles] knew éach other for five and a half years?
[CASTILLO:] Correct.
[APPELLANT’S COUNSEL:] And that you guys had your problems, your good days and your bad days?
[CASTILLO:] Correct.
[APPELLANT’S COUNSEL:] What do you mean by that?
[CASTILLO:] Like all couples have good days and bad days. You fight sometimes, you argue. . You argue and fuss and fight, and sometimes it’s good and sometimes it’s not good. With us it was bad because he was battling an addiction.
[APPELLANT’S COUNSEL:] And when you fought, he would get physical with you, wouldn’t he?
[CASTILLO:] No, ma’am.
[APPELLANT’S COUNSEL:] It is your testimony here today that [Diles], you’re telling this jury, that [Diles] was never physical with you; is that your tes&hony to this jury today?
[CASTILLO:] If you want to call pushing, yeah, we pushed each other around. As far as black eyes, punching, kicking, no.
[APPELLANT’S COUNSEL:] So, your testimony now is that you would get physical in that you would — he would push you and you would push him back? ■
[CASTILLO:] Yes.
[APPELLANT’S COUNSEL:] Is it your testimony that it never got worse than that?
[CASTILLO:] Yes.
THE COURT: Will the attorneys approach please?
(Bench conference.)
THE COURT: All right. And perhaps there was — maybe you misconstrued my ruling. Just so that we’re clear, we talked about opening statements, and we talked about the fact that there may come a time when reputation testimony could become admissible in regards to [appellant’s] knowledge of [Diles’s] reputation.
[APPELLANTS COUNSEL]: Right.
THE COURT: - At this timé, I have not ruled on [whether] extraneous bad acts on the part of [Diles] are admissible for character conformity or anything else. They’re clearly not relevant to prove character .conformity, and I haven’t ruled that they’re admissible for any other purpose. I have granted the [miction in [l]imine.. While I gave you some latitude in opening statement, now I have not determined this evidence to be admissible; and it’s not admissible at this time.
[APPELLANT’S COUNSEL:] Okay. I was responding to — on direct examination, she said that they had their good days and bad days.
THE COURT: And she answered that question.
[APPELLANT’S COUNSEL:] And the reason for my questioning at this point was because that answer mislead the jury to make it sound like
THE COURT: I’m not going to allow you to, I guess, there was a [m]otion in [l]imine regarding that. It is still in effect.
[APPELLANT’S COUNSEL:] At this point, I would ask the Court that I be allowed to go into that with this particular witness. And so you’re saying — and *451 I want to make sure — and I’m only doing this to make sure that I’m asking at this point to be able to go into it with this particular witness at this time.
THE COURT: I’ve made it very clear that—
[APPELLANT’S COUNSEL:] Okay.
(End of bench conference.) .
1. Error preservation at trial
Texas courts recognize.a “narrow exception” to Texas Rule of Evidence 103(a)(2)’s requirements for error preservation during the defendant’s cross-examination of a State’s witness. See Holmes v. State, 323 S.W.3d 163, 169 (Tex.Crim.App.2009). A defendant may preserve a complaint when a trial court prohibits the defendant from questioning a State’s witness about matters that affect the “witness’s credibility” by merely establishing “ ‘what general subject matter he desire[s] to examine the witness about during his cross-examination and, if challenged, show on the record why such should be admitted into evidence.’ ” Id. at 168 (quoting Virts v. State, 739 S.W.2d 25, 29 (Tex.Crim.App.1987)). A “witness’s credibility” refers to “personal characteristics of the witness.” Holmes, 323 S.W.3d at 168. Matters that affect a “witness’s credibility” are “matters which might show malice, ill feeling, ill will, bias, prejudice, or animus.” Id. “The credibility of a witness’s testimony,” in contrast, refers to the substance of the evidence. Id.-, see id at 170-71 (defendant’s proffer that he wished to challenge the underlying science of a breathalyzer machine merely called into question the substance of the State’s expert’s testimony, not the expert’s credibility). A defendant who wishes to cross-examine a State’s witness regarding “the credibility of a witness’s testimony” must preserve error according to Rule 103(a)(2). Id. at 169.
The record shows that appellant did not make an offer of proof concerning the testimony he wished to elicit, during Castillo’s cross-examination, as to-appellant’s knowledge that Diles was a member-of,the Crips (issue three). ■ Additionally, it is not otherwise apparent from the record that appellant’s counsel wished to explore this matter during. Castillo’s cross-examination. We hold that appellant did not preserve a complaint regarding the exclusion of testimony regarding appellant’s- knowledge that Diles was a member of the Crips during Castillo’s cross-examination. See Tex. R. Evid. 103(a)(2); Holmes, 323 S.W.3d at 168-69;, see also Tex. R.App. P. 33.1.
It is a closer question whether appellant preserved a complaint regarding the exclusion of testimony as to Diles’s physical abuse of Castillo (issue one) for the purpose of attacking Castillo’s credibility on cross-examination.
The record shows that appellant’s counsel examined Castillo .regarding her testimony on direct examination. Counsel asked Castillo to explain her. statement that she and Diles “had our good days and our,bad days.” Counsel asserted at the bench conference during cross-examination: [T]he reason for my questioning at this point was because that answer mislead the jury to make it sound like — .” The trial court interrupted appellant’s counsel at this point.
Appellant’s counsel never asserted that she wished to examine Castillo regarding malice, ill feeling, ill will, bias, prejudice, or animus. See Holmes, 323. S.W.3d at 168. Additionally, counsel never asserted that she wished to examine Castillo regarding “inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting [her] credibility.” See Virts v. State, 739 S.W.2d 25, 29 (Tex.Crim.App. *452 1987). Counsel’s questions to Castillo and counsel’s argument to the trial court centered around the meaning of Castillo’s answer- on direct examination that she and Diles “had. our good days and our bad days;” counsel’s questions and arguments did not necessarily imply an attack on Castillo’s credibility.[20]
Nevertheless, we assume without deciding that appellant preserved error regarding the trial court’s exclusion of' testimony as to Diles’s physical abuse of Castillo during Castillo’s cross-examination. We examine whether the trial court erred by excluding any additional testimony appellant may have sought to elicit on the subject.
2.. Collateral matter
The State contends that the trial court acted within its discretion by limiting cross-examination testimony on the matter of Diles’s physical abuse of Castillo because it was collateral to the issues at trial.
T-he general rule is that a party is not entitled to impeach a witness on a collateral matter. Ramirez v. State, 802 S.W.2d 674, 675 (Tex.Crim.App.1990). “ ‘The test as to whether a matter is collateral is whether the cross-examining party would be entitled to prove it as a part of his case tending to establish his plea.’ ” Id. (quoting Bates v. State, 587 S.W.2d 121, 133 (Tex.Crim.App.1979)); see also Keller v. State, 662 S.W.2d 362, 365 (Tex.Crim.App.1984) (“[A] ‘collateral’' question is one which seeks only to test the witnesses] general credibility, or relates to facts irrelevant to the issues at trial.”).[21] Additionally, “[t]he possible animus, motive, or ill will of a prosecution witness who testifies against the defendant is never a collateral or irrelevant inquiry, and the defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him.” Billodeau v. State, 277 S.W.3d 34, 42-43 (Tex.Crim.App.2009).
Appellant contends that the matter of Diles’s physical abuse of Castillo bore directly on “her animus, motive, and ill will.” Appellant, however, does not explain this connection. We determine that the trial court did not err in determining that the matter of Diles’s physical abuse of Castillo was collateral to the issues at trial because it did not bear on a possible animus, motive, or ill will that Castillo had to testily against appellant. See Tollett v. State, 422 S.W.3d 886, 893 n.2 (Tex.App.-Houston [14th Dist.] 2014, pet. ref'd) (“[A]ppellant does not explain, and we conceive of no reason, why the excluded evidence supports a Finding Officer Hernandez had a motive or bias to falsely testify.”).[22]
Appellant also contends that the matter of Diles’s physical abuse bore directly on Castillo’s “credibility.” We de *453 termine that, to the extent the matter bore on Castillo’s credibility, it did so only generally. “[T]here is an important distinction between an attack on the general credibility of a witness and a more particular attack on credibility that reveals ‘possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.’ ” Hammer v. State, 296 S.W.3d 555, 562 (Tex.Crim.App.2009) (citing Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). Diles’s abuse of Castillo does not explain Diles’s intent on March 11, 2012, nor does it clarify appellant’s apprehension of danger fr.om Diles. We hold that the matter of Diles’s abuse of Castillo is collateral to the issues at trial. See Keller, 662 S.W.2d at 365; Clay v. State, 390 S.W.3d 1, 12 (Tex.App.-Texarkana 2012, pet. ref'd) (“[T]he attempted impeachment was an attack on the witnesses] general credibility — ‘you lied to your parents so we may infer that you are lying about this sexual assault.’ ”). Therefore, the trial court did not abuse its discretion in limiting testimony, during'Castillo’s cross-examination, offered to impeach Castillo’s credibility on a collateral matter. See Ramirez, 802 S.W.2d at 675.
3. False impression
Determining the matter to be collateral does not end our analysis. While generally a party is not entitled to impeach a witness on a collateral matter, when a witness leaves a false impression concerning a matter relating to her credibility, the opposing party is allowed to correct that false impression. Id. at 675-76;. see Daggett v. State, 187 S.W.3d 444, 454 n. 24 (Tex.Crim.App.2005) (“[T]he concept of impeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence.”) (internal quotations omitted). This type of impeachment, however, is -only permissible when the witness voluntarily testifies to the collateral matter. Lopez v. State, 928 S.W.2d 528, 531 (Tex.Crim.App.1996). “The State may not rely on its own questioning on cross-examination to contradict the defendant and get in evidence collateral matters and evidence of convictions for other offenses which would otherwise be inadmissible.” Shipman v. State, 604 S.W.2d 182, 185 (Tex.Crim.App. [Panel Op.] 1980); see also Saglimbeni v. State, 100 S.W.3d 429, 434 (Tex.App.-San Antonio 2002, pet. ref'd) (“There is no reason the false impression rule should not work both ways.”).
Castillo did not voluntarily testify regarding Diles’s physical abuse. She testified on direct examination that she and Diles “had our good days and our bad days.” She further explained that the couple’s bad days were due to Diles’s drug abuse. Appellant’s counsel asked Castillo to clarify her answer on cross-examination. Castillo stated: “Like all couples have good days and bad days. You fight sometimes, you argue. You argue and fuss and fight, and sometimes it’s good and sometimes it’s not good. With us it was bad because he was battling an addiction.” Counsel then asked: “And when you fought, he would get physical with you, wouldn’t he?” Castillo answered: “No, ma’am.” She then qualified her statement by testifying that' she and Diles pushed each other around, but that the abuse never got worse than that.
We determine that Castillo did not volunteer testimony regarding Diles’s physical abuse; instead, she testified on this matter only when prompted by appellant’s counsel. , Under these circumstances, Castillo did not “open the door” to the admission of evidence to correct a false impression. See Lopez, 928 S.W.2d *454 at 531 (evidence, not admissible to correct a false= impression regarding defendant’s behavior on drugs when the State asked appellant on cross-examination about his behavior on drugs). We hold that the trial court did not abuse its discretion, in excluding testimony regarding Diles’s physical abuse of Castillo during Castillo’s cross-examination.[23]
We hold that the trial court did not abuse its discretion by excluding testimony regarding Diles’s physical abuse of Castillo (issue one)'- and appellant’s knowledge that Diles was a member of the Crips (issue three) offered to attack Castillo’s credibility. •
D. Rebuttal Character Evidence
Finally, appellant argues that testimony regarding Diles’s physical abuse of Castillo and appellant’s knowledge that Diles was a member of the Crips was admissible to rebut the false impression Castillo gave to the jury of Diles’s peaceable character. Appellant asserts that the State “opened the door” to rebuttal character evidence by “reeount[ing] that Diles’[s] nickname was ‘Mellow”’ and by “volunteering that Diles earned this inherently-peaeeable nickname because ‘he was just real laid back.’ ”
A witness may “open the door” to rebuttal character evidence in a homicide case by. placing the defendant’s or the complainant’s peaceable character at issue. See Tex. R. Evid. 404(a)(2); Harrison v. State, 241 S.W.3d 23, 25-28 (Tex.Crim.App.2007) (trial court did not abuse its discretion by allowing rebuttal character evidence from the State after a defense witness testified that defendant was a “good” and “sweet” person); Rivera v. State, 82 S.W.3d 64, 67-68 (Tex.App.-San Antonio 2002, pet. ref'd) (trial court did not abuse its discretion by refusing rebuttal character evidence from defendant after a State’s witness testified that victim’s nickname was “Psycho” and that victim was called “Psycho” because “[h]e was kind of fiinny and crazy all the time”). Under Rule 405, proof of character must be made by testimony as to reputation or by testimony in the form of an opinion; cross-examination is allowable into relevant specific instances of conduct. Tex. R. Evid. 405; Harrison, 241 S.W.3d at 25. Cross-examination rebuttal evidence may be elicited in the form of “have you heard” or “were you aware” questions about specific instances of conduct inconsistent with the character trait brought into issue. Harrison, 241 S.W.3d at 25.
The record shows that Appellant’s counsel was the first person at trial .to refer to Diles as “Mellow.” Counsel referred to Diles as “Mellow” in her opening statement, and she continued to refer to Diles as “Mellow” throughout trial.
The record also shows' that the State asked Castillo the following on direct examination:
[THE STATE:] Did [Diles] have a nickname at all?
[CASTILLO:] Mellow.
[THE STATE:] Mellow. Do you know how he got that nickname?
[APPELLANT’S COUNSEL]: Objection, calls for speculation.
*455 THE COURT: You may answer if you know.
[CASTILLO:] Me, ma’am?
THE COURT: - Yes.
[CASTILLO:] Because he was just real laid back.
On this record, it is debatable whether the State or appellant brought Diles’s character into issue. Assuming, without deciding that the State “opened the door” to rebuttal evidence as to Diles’s character, we hold that the .trial court did not abuse its discretion by .excluding testimony that Diles physically abused Castillo (issue one) and that appellant knew that Diles was a member of the Crips (issue three).
Appellant does not clarify which trial court rulings were abuses of discretion. To the extent appellant contends that the trial court abused its discretion by excluding testimony from his witnesses, we determine that such exclusion was not an abuse of discretion. Under Rule 405, in all cases in which evidence of a person’s character trait is admissible, proof may be made by testimony as to reputation or •testimony in the form of an opinion. Tex. R. Evid. 405(a). Testimony regarding Diles’s physical abuse of Castillo and testimony that appellant knew that Diles was a member of the Crips is not reputation or opinion testimony. Cf Tibbs, 125 S.W.3d at 89. Therefore, appellant did not undertake to elicit such testimony from his witnesses. See Tex.R. Evid. 405(a).
Appellant’s counsel also sought to cross-examine Castillo regarding Diles’s physical abuse toward her.[24] To the extent appellant challenges the exclusion of testimony, during Castillo’s cross-examination, we hold that the trial court did not abuse its discretion because appellant’s counsel did not apprise the trial court that she wished • to cross-examine Castillo, to discredit her testimony as to Diles’s peaceable character. See Harrison, 241 S.W.3d at 25 (“The purpose of permitting [character witness] cross-examination, is not to discredit the person whose character is in issue, but rather to discredit the testimony of the character witness.”).
The record shows that appellant’s counsel did not cross-examine . Castillo regarding her statement that Diles was “just real laid back.” Instead, counsel inquired into Castillo’s statement that she and Diles “had our good days and our bad days.” At the bench conference during Castillo’s cross-examination, appellant’s counsel asserted that she sought to inquire .as to Castillo’s statement that she and. Diles “had our good days and oúr bad days” because “that answer - mislead the jury.” The next day, before the resumption of trial, appellant’s counsel told the court that “it was [counsel’s] intention to impeach [Castillo] on prior inconsistent statements.” Later,, counsel attempted to introduce evidence of Diles’s physical abuse of Castillo through appellant’s and Bomer’s testimony. Counsel made an offer of proof. Counsel proffered that appellant and Borner would have testified as to Diles’s physical abuse o'f Castillo; counsel did not proffer additional lines of inquiry she would have explored during Castillo’s cross-examination.
On this record, we determine that appellant’s counsel did not argue in the trial court that testimony regarding Diles’s physical abuse of Castillo was admissible to discredit her testimony as to Diles’s peaceable character. Therefore, appellant did not preserve a complaint that the trial court abused its discretion by excluding *456 Castillo’s testimony on grounds that it was admissible to discredit any character testimony she may have given on direct examination. See Tex. R. App. P. 33.1; Tex. R. Evid. 405(a); Reyna, 168 S.W.3d at 177 (“[I]t is not enough to tell the judge that evidence is admissible. The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible”).
We hold that the trial court did not abuse its discretion by excluding testimony regarding Diles’s physical abuse of Castillo (issue one) and appellant’s knowledge that Diles was a member of the Crips (issue three) offered to rebut the State’s impression of Diles’s peaceable character.
We overrule appellant’s issues one, two, and three.
BRADY Claim
In his fourth issue, appellant contends that the trial court erred by denying his request that the State provide him with copies of offense reports in cases in which Diles was charged with crimes of violence.
The trial court signed a discovery order requiring the State to furnish for inspection and copying “[a]ll exculpatory evidence pursuant to Brady v. Maryland and related cases.” See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). On the second day of trial, appellant’s counsel requested copies of the offense reports “for [Diles’s] prior acts of violence” pursuant to the court’s discovery order. Counsel argued that the offense reports were “Brady material.” The trial court denied counsel’s request. Citing Pena v. State, 353 S.W.3d 797, 814-15 (Tex.Crim.App.2011), appellant argues that the trial court abused its discretion by not enforcing the discovery order. Appellant asserts: “The offense reports of Diles’[s] prior convictions for robbery and assault would have led to the discovery of witnesses in these cases — either Diles’[s] victims or the peace officers who investigated them — whose testimony as to his character and reputation for violence was admissible.”
In Brady v. Maryland, the United States Supreme Court held “that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” Brady, 373 U.S. at 87, 83 S.Ct. 1194; see also United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In Pena v. State, the Texas Court of Criminal Appeals held that, to find reversible error under Brady and Bagley, a defendant must show that (1) the State failed to disclose evidence, regardless of the prosecution’s good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed the outcome of trial would have been different. Pena, 353 S.W.3d at 809. Additionally, the evidence central to the Brady claim must be admissible in court. Id.-, see id. at 809-15 (trial court erred in denying defendant’s motion for new trial where audio portion of a videotape that was discovered in the State’s possession after the jury began deliberations was shown to be admissible as exculpatory and impeachment evidence and undermined confidence in the conviction the jury rendered).
To establish materiality under Brady, a defendant must show that, “in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor mad.e a timely disclosure.” Id. at 812 (internal quotations omitted). “The mere *457 possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish ‘materiality’ in the constitutional sense.” United States v. Agurs, 427 U.S. 97, 110-11, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
Appellant speculates as to the existence, contents, favorability, and usefulness of offense reports in cases in which Diles was charged with crimes of violence. Appellant anticipates that the offense reports, if in existence, could have led to the discovery of character witnesses, whose testimony as to Diles’s character for violence could have affected the jury’s decision on appellant’s guilt.' We hold that appellant’s speculation does not establish Brady materiality. See Pena, 353 S.W.3d at 812; Michaelwicz v. State, 186 S.W.3d 601, 615 (Tex.App.-Austin 2006, pet. ref d) (“The mere possibility that appellant may have found the name or names of other men or suspects to suggest as alternative perpetrators in the instant case which might have helped the defense or might havé affected the outcome of the trial is not ‘materiality’ under Brady.”).
We hold that the trial court did not err in denying appellant’s request that the State provide him with copies of offense reports in cases in which Diles was charged with crimes of violence because appellant did not establish the State’s obligation to disclose the offense reports under Brady. See Pena, 353 S.W.3d at 812; Page v. State, 7 S.W.3d 202, 206 (Tex.App.-Fort Worth 1999, pet. ref'd) (‘We will not order the State to produce information under Brady based merely on Appellant’s speculation that the requested information contained exculpatory evidence.”); see also Thomas v. State, 841 S.W.2d 399, 407 (Tex.Crim.App.1992) (the State’s duty to disclose evidence under Brady “attaches, with or without a request for the evidence.”); Michaelwicz, 186 S.W.3d at 616 (“Police arrest and offense reports are not generally subject to production.”). We overrule appellant’s fourth issue.
, Conclusion
Having overruled appellant’s four issues, we affirm the trial court’s judgment. '
(McCally, J., concurring).

. Appellant refers to Diles's prior convictions for assault and robbery throughout his appellate brief; however, appellant’s trial counsel asserted at the bench conference that Diles was charged twice with robbery, but that the charges were reduced to theft. See Tex. Penal Code Ann. §§ 29.02 (Vernon 2011), 31.03 (Vernon Supp. 2014).

. The parties also refer to Castillo as Diles’s wife or common-law wife. We refer to Castillo as Diles’s girlfriend because Castillo was legally married to another man at the time of trial.

. We do not summarize the officer’s testimo- . ny and several other witnesses' testimony because appellant does not challenge the sufficiency of the evidence supporting his conviction, and because the testimony is not dispositive of appellant's issues.

. The State asked Castillo to "talk about March 11th of 2012." Castillo testified to events that occurred on March 10, 2012, as well .as events that occurred during the early morning of March 11, 2012.- Diles was shot at approximately 5:00 a.m. on March 11, 2012-, .

. Castillo demonstrated the grasp to the jury. The Webster’s International Dictionary defines "full nelson” as "a hold gained by a wrestler who. from a position behind his opponent places both arms under his opponent’s arms and clasps his hands or wrists behind the opponent’s neck.” See Webster’s Third New International Dictionary 919 (Philip Babcock Grove ed., 1993).

. Counsel purported to make a bill of exception; however, counsel proffered the substance of the excluded evidence. before the trial court on the. record. Under these circumstances, counsel made an offer of proof, rather than a bill of exception. Compare Tex. R. Evid. 103 with Tex. R. App. P. 33.2; see also In re Estate of Miller, 243 S.W.3d 831, 837-38 (Tex.App-Dallas 2008, no pet.) (an offer of proof formerly was referred to as an informal bill of exception). - ’

. “[T]here are two distinct scenarios in which rulings excluding evidence might rise to the level of a constitutional violation: 1) a state evidentiary rule which categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence which is vital to his defense; and 2) a trial court’s clearly erroneous ruling excluding otherwise relevant, reliable evidence which forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense.” Wiley v. State, 74 S.W.3d 399, 405 (Tex.Crim.App.2002) (internal quotations omitted). Appellant does not complain that a state evidentiary rule categorically and arbitrarily prohibited him from offering otherwise relevant, reliable evidence which is vital to his defense; he argues only that the trial court made clearly erroneous rulings excluding admissible evidence that prevented him from presenting his defense.

. We do not analyze harm because we conclude that the trial court did not abuse its discretion. See Wiley, 74 S.W.3d at 408.

. The Texas Court of Criminal Appeals adopted revisions to the Texas Rules of Evidence, except as to Rules 511 and 613, effective April 1, 2015. See Final Approval of Amendments to the Texas Rules of Evidence, Mise. Docket No. 15-001 (Tex.Crim.App. Mar. 12, 2015). We cite to the previous version of the Rules because appellant's trial occurred ■ in- 2013, before the effective date of the amendments.

. Character evidence introduced to prove the victim’s status as first aggressor is called "uncommunicated character” evidence because "it does not matter if the defendant was aware of the victim’s violent character.” Ex parte Miller, 330 S.W.3d at 619.

. Texas common law was broader and allowed the admission of evidence of specific instances of behavior to show a victim’s character trait for violence. Ex parte Miller, 330 S.W.3d at 619 n. 21; see Dempsey v. State, 159 Tex.Crim. 602, 266 S.W.2d 875 (Tex.Crim.App.1954). The Texas Rules of Evidence superseded the common law standard. See Tate, 981 S.W.2d at 192.

.Evidence introduced to show a defendant’s apprehension of danger is called "communicated character” evidence "because the defendant is aware of the victim's violent tendencies and perceives a danger posed by the victim, regardless of whether the danger is real or not.” Ex parte Miller, 330 S.W.3d at 618'.'

. Appellant, Castillo, and Brown each testified that Diles initiated contact with appellant by grabbing appellant's neck. Appellant’s counsel asserted during her closing argument: "When you grab a man in the fashion that ... [Diles] grabbed [appellant], your intentions are clear. [Appellánt] wasn’t punching holes in the wall at that time, so the only reason that [Diles] grabbed him at that point was to harm him.” Counsel further stated: "No witness told you that [appellant] was starting to beat [Diles] up. No witness told you 'that [appellant] was ti^dng to harm him, only that he was trying to get away.” On appeal, appellant's counsel argued that appellant could have been considered the first aggressor for punching holes in the apartment wall. Counsel also asserted that it is ambiguous whether Diles put appellant in a playful, rather than harmful, wrestling hold, and that it is ambiguous whether Diles was reaching for appellant’s gun when Diles grabbed appellant’s shirt in Castillo’s version of events.

. Rule 405 provides that: “In all cases where [reputation or opinion] testimony is admitted under this rule, on cross-examina.tion inquiry is allowable into relevant specific instances of conduct.” Appellant does not argue that the trial court denied him the opportunity to cross-examine a character witness through inquiry into relevant specific instances of Diles’s conduct. This matter is addressed in further detail below.

. Appellant cites to Thompson v. State, 659 S.W.2d 649, 654 (Tex.Crim.App.1983), supereded by rule, Tex. R. Evid. 404, as recognized in Mozon, 991 S.W.2d at 845-46, to support , his assertion that "the trial court’s reasoning and analysis in excluding evidence of Diles’[s] violent past was an abuse of discretion.” Thompson was decided under the .now-superseded common law standard, which allowed the admission of evidence .of prior specific instances of violence to show á victim's character trait for violence. See id. at 653-55; Ex parte Miller, 330 S.W.3d at 619 n. 21; Mozon, 991 S.W.2d at 845-46. Appellant asserts: '“[T]he [Thompson ] court . concluded that it was error to exclude evidence of the victim’s violent character because his act of walking toward the defendant with his arms outstretched was ambiguously aggressive.” Thompson held that the trial court properly excluded evidence of the victim's prior convictions because the defendant "failed to establish the prior convictions, involved acts of violence which would explain the [victim’s] ambiguously aggressive conduct toward [the defendant] at the time of the offense.” Thompson, 659 S.W.2d at 655.

.Appellant argues that Diles’s intent in grabbing appellant was ambiguous. He asserts: "[T]he vast body [of] evidence of Diles’[s] character 'and reputation for violence and aggression [a]ppellant repeatedly sought to elicit was clearly relevant.” Appellant’s trial counsel did not seek to admit character evidence. Counsel sought to admit evidence regarding Diles’s repeated physical abuse of Castillo (issúé one) and evidence that appellant knew that Diles was a member of the Crips (issue three). Evidence of these extraneous acts is "admissible only to the extent that they are relevant for a purpose other "than character conformity." Torres, 71 S.Wi3d at 760;.' see Téx. R. Evid. '404(b). Appellant does not explain how testimony of Diles’s physical abuse of Castillo and appellant’s knowledge of Diles’s gang membership showed anything other than Diles’s conformi- *447 1y with a violent character or clarified Diles’s intent in grabbing appellant.

. Castillo’s statements were not inconsistent with appellant’s and Borner’s statement at the time Castillo testified because Castillo testified before appellant, and Bomer testified. Appellant does not clarify which of Castillo’s statements he considers "patently inconsistent.”-?

. Appellant complains about only one trial court ruling in the section of his brief entitled “This Evidence Bore Directly on Castillo's Credibility.” He states: "Because the- trial court's ruling is foreclosed by the controlling authority alluded to above, it was an abuse of discretion.”

. Additionally, it is not clear what other questions appellant’s counsel would have asked Castillo. Cf. Williams v. State, 937 S.W.2d 479, 489 (Tex.Crim.App.1996) (trial court’s error in excluding testimony, if any, was cured when defense counsel successfully elicited testimony; a'ny further testimony that appellant may have wished to elicit was not apparent from the context).

. Appellant does not contend that he had to prove Diles’s violent character or that' the State had to prove Diles’s peaceable character at trial.- See Tate, 981 S.W.2d at 193 n. 5 ("[A] victim’s character is not an essential element of’a claim of self-defense.”).

.Evidence of Diles’s physical abuse of Castillo may suggest that Castillo was predisposed to testify in favor of appellant, the man who shot her abuser. Appellant does not explain how the evidence shows that Castillo may have been predisposed to testify against appellant.

. Additionally, the trial court did not abuse its discretion in excluding testimony from appellant and Borner offered to rebut Castillo's impression of Diles’s physical abuse because Castillo did not “open the door" to such testimony. See Lopez, 928 S.W.2d at 531; cf. Hayden v. State, 296 S.W.3d 549, 554 (Tex.Crim.App.2009) ("Unless the witness's testimony created a false impression that is directly. relevant to the offense charged, allowing a party to delve into the issue beyond the limits of cross examination wastes time and confuses the issues.'') (internal quotations omitted).

. Counsel did not attempt to cross-examine Castillo regarding appellant's knowledge that Diles was a member of the Crips.