ACCEPTED
04-16-00317-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
10/5/2016 11:43:43 AM
KEITH HOTTLE
CLERK

NO. 04-16-00317-CR

IN THE COURT OF APPEALS FOR THE
FOURTH DISTRICT OF TEXAS
SAN ANTONIO, TEXAS

_____

ART PATRICK,
*Appellant*

v.

THE STATE OF TEXAS,
*Appellee*

_____

ON APPEAL FROM THE COUNTY COURT AT LAW
NO. 7 OF BEXAR COUNTY, TEXAS
CAUSE NUMBER 511123

_____

BRIEF FOR THE STATE

_____

NICHOLAS "NICO" LAHOOD
Criminal District Attorney
Bexar County, Texas

JENNIFER ROSSMEIER BROWN
Assistant Criminal District Attorney
Bexar County, Texas
Paul Elizondo Tower
101 W. Nueva Street
San Antonio, Texas 78205
Phone: (210) 335-1546; Email: jennifer.rossmeier@bexar.org
State Bar No. 24079247

Attorneys for the State of Texas

ORAL ARGUMENT NOT REQUESTED

## IDENTITY OF THE PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.2(a), the appellee supplements the appellant's list of parties as follows:

**APPELLATE STATE'S ATTORNEY:**       **Jennifer Rossmeier Brown**
State Bar No. 24079247
Assistant Criminal District Attorney
Paul Elizondo Tower
101 W. Nueva Street
San Antonio, Texas 78205
(210) 335-1546
Email: jennifer.rossmeier@bexar.org

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES AND COUNSEL ................................................................ ii

TABLE OF CONTENTS ........................................................................................... iii

TABLE OF AUTHORITIES ...................................................................................... iv

BRIEF FOR THE STATE ...........................................................................................1

STATEMENT OF THE CASE .......................................................................................1

STATEMENT OF THE FACTS......................................................................................2

SUMMARY OF THE ARGUMENT .................................................................................3

ARGUMENT ...........................................................................................................5

    **First Point of Error**...................................................................................5

        *Relevant Facts*.........................................................................................5

        *Standard of Review* ..................................................................................6

        *Applicable Law and Application of Law to the Present Record*........................6

    **Second Point of Error**..............................................................................8

        *Relevant Facts*.........................................................................................8

        *Standard of Review* ................................................................................10

        *Applicable Law*......................................................................................10

        *Application of Law to the Present Record* ..................................................12

    **Third Point of Error**..............................................................................23

        *Standard of Review* ................................................................................23

        *Applicable Law and Application of Law to the Present Record*......................23

PRAYER ..............................................................................................................25

CERTIFICATE OF SERVICE AND COMPLIANCE ...........................................................26

**CASES**

*Allen v. State*, No. 14-13-01030-CR, 2015 Tex. App. LEXIS 8144, at *1 (Tex. App.—Houston [14th Dist.] August 4, 2015, no pet.)..............................................11

*Burt v. State*, 445 S.W.3d 752 (Tex. Crim. App. 2014) ..........................................24

*Cartwright v. State*, 605 S.W.2d 287 (Tex. Crim. App. 1980)................................23

*Casey v. State*, 215 S.W.3d 870 (Tex. Crim. App. 2007)........................................12

*Castorena v. State*, 486 S.W.3d 630 (Tex. App.—San Antonio 2016, no pet.)..........
.......................................................................................................... 6, 7, 8

*Crawford v. State*, 646 S.W.2d 936 (Tex. Crim. App. 1983)....................................7

*DeLeon v. State*, 466 S.W.2d 573 (Tex. Crim. App. 1971).....................................24

*Ex parte Miller*, 330 S.W.3d 610 (Tex. Crim. App. 2009).............................. 11, 12

*Kitchens v. State*, 823 S.W.2d 256 (Tex. Crim. App. 1991).....................................7

*Lemos v. State*, 27 S.W.3d 42 (Tex. App.—San Antonio 2000, pet. ref'd) ............23

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1990)............................23

*Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002)........................................12

*Mozon v. State*, 991 S.W.2d 841 (Tex. Crim. App. 1999)......................................11

*Rodriguez v. State*, No. 04-12-00859-CR, 2013 Tex. App. LEXIS 14876, at *1 (Tex. App.—San Antonio December 11, 2013, no pet.) (mem. op., not designated for publication)........................................................................................ 12, 13

*Romero v. State*, 800 S.W.2d 539 (Tex. Crim. App. 1990)....................................10

*Smith v. State*, 309 S.W.3d 10 (Tex. Crim. App. 2010) ...........................................6

*Tate v. State*, 981 S.W.2d 189 (Tex. Crim. App. 1998) ........................................11

*Torres v. State*, 71 S.W.3d 758 (Tex. Crim. App. 2002).................................. 10, 11

*Vasquez v. State*, 665 S.W.2d 484 (Tex. Cr. App. 1984) ...........................................7

*Walters v. State*, 247 S.W.3d 204 (Tex. Crim. App. 2007) ...................................12

**R**ULES
Tex. R. App. P. 38.2(a) ................................................................................... ii

**S**TATUTES
Tex. Code Crim. Proc. art. 10(a) (West 2015).......................................................23

Tex. Code Crim. Proc. art. 21.15 (West 2015) ........................................................6

| ART PATRICK, | § | IN THE FOURTH DISTRICT |
| APPELLANT | § | |
| | § | |
| VS. | § | COURT OF APPEALS |
| | § | |
| THE STATE OF TEXAS, | § | |
| APPELLEE | § | SAN ANTONIO, TEXAS |

## BRIEF FOR THE STATE

To the Honorable Fourth Court:

Now comes, Nicholas "Nico" LaHood, Criminal District Attorney of Bexar County, Texas, and files this brief for the State.

## STATEMENT OF THE CASE

On February 18, 2016 the State filed an information against Art Patrick ("Appellant") charging him with the offense of assault bodily injury to a family or household member. (1 CR at 9) On April 15, 2016, Appellant filed a Motion to Quash Information for Failure to Adequately Allege Recklessness. (1 CR at 25) On April 20, 2016, the State filed a Motion to Amend Information. (1 CR at 34) After a brief hearing, the trial court granted the State's motion to amend on April 21, 2016. (1 CR at 37-38 and 2 RR at 11-12) The State filed its amended information on May 2, 2016. (1 CR at 43)

Prior to beginning trial, Appellant objected to the amended information, arguing it failed to adequately describe the acts which the State alleged were

1

reckless and the Court denied Appellant's motion. (3 RR at 4 and 7)[1] The parties proceeded to trial and a jury found Appellant guilty of assault-bodily injury to a family or household member as alleged in the State's information. (1 CR at 63 and 3 RR at 7 and 5 RR at 54) The trial court placed Appellant on community supervision with various conditions, including medical restitution. (1 CR at 66 and 5 RR at 58-59) Appellant timely filed his notice of appeal and appeals from his conviction. (1 CR at 69)

## STATEMENT OF THE FACTS

Although the State does not endorse Appellant's "Statement of Facts," the State does not put forth its own factual assertions. *See* Tex. R. App. P. 38.2(a)(1)(B). To avoid repetition, the State will supply supplemental pertinent facts supported with record references within its response to Appellant's points of error.

---

[1] Before the hearing began, Appellant stated he was "ready for trial subject to a hearing on the Motion to Quash the Amended Information," however, no motion by that name is contained in the clerk's record. (3 RR at 4)

## SUMMARY OF THE ARGUMENT

Appellant alleges three points of error on appeal. In Appellant's first point of error, he argues that the State's information failed to detail which acts it intended to rely upon to constitute recklessness, and as such, the trial court erred in denying his Motion to Quash Information for Failure to Adequately Allege Recklessness. Because the State pled intentional and knowing mental states in addition to recklessness, the State was not required to plead specific acts of recklessness in its information. Thus, the trial court did not err in denying Appellant's motion to quash and Appellant's first point of error should be overruled.

In his second point of error, Appellant contends that the trial court erred in excluding evidence regarding a prior incident where the complainant allegedly assaulted Appellant. Appellant argues that the evidence was admissible to support his theory of self-defense. While this communicated character evidence was admissible at trial, any error stemming from the trial court's exclusion of the complained-of evidence is harmless and does not warrant reversal on appeal. In the instant case, overwhelming evidence established that Appellant struck the complainant out of anger and not out of self-defense. Further, even without the admission of the character evidence, the jury heard sufficient evidence regarding Appellant's self-defense claim and were charged on self-defense at trial. Because any error resulting from the trial court's exclusion of the evidence did not affect

Appellant's substantial rights, Appellant's second point of error should be overruled.

In Appellant's third point of error, he argues that the trial court erred in its implicit denial of his objection to the order of restitution at sentencing. Appellant contends the trial court erred in ordering restitution to be determined by the probation department and asserts he was entitled to a restitution hearing. Because the trial court is not permitted to delegate its authority regarding the imposition of conditions of community supervision, the State agrees that the cause should be remanded to the trial court for a restitution hearing.

## First Point of Error

Appellant argues that the trial court erred when it overruled his motion to quash, because the State's information did not set out the acts relied upon to constitute recklessness. In support of his argument, Appellant relies on Article 21.15 of the Texas Code of Criminal Procedure, arguing that it requires additional language in the State's charging instrument where recklessness is alleged.

In this case, the trial court did not err in denying Appellant's motion to quash because the State alleged three different culpable mental states, and as such, Article 21.15's requirement was not applicable to its information. Appellant's first point of error should be overruled.

### *Relevant Facts*

The State's initial information in the instant case charged that Appellant intentionally, knowingly, and recklessly caused bodily injury to D.W.,[2] the complainant, by striking the complainant with the hand of the defendant. (1 CR at 9) On May 2, 2016, the State filed an amended information which alleged that Appellant intentionally, knowingly, and recklessly caused bodily injury to D.W. by striking the complainant with the hand of the defendant and pulling the complainant with the hand of the defendant. (1 CR at 43)

---

[2] Because the complainant is under eighteen years of age, the State will refer to him by his initials.

5

*Standard of Review*

On appeal, the trial court's order regarding a motion to quash a charging document is reviewed de novo because the sufficiency of a charging instrument is a question of law. *Smith v. State*, 309 S.W.3d 10, 14 (Tex. Crim. App. 2010).

*Applicable Law and Application of Law to the Present Record*

Appellant contends the trial court erred in denying his Motion to Quash Information for Failure to Adequately Allege Recklessness. Specifically, Appellant argues that pursuant to Article 21.15 of the Texas Code of Criminal Procedure, the State was required to allege "the acts relied upon to constitute recklessness" in its information. (Appellant's Brief at 16); Tex. Code Crim. Proc. art. 21.15 (West 2015).

Appellant argues that the amended information stated that Appellant recklessly caused bodily injury to the complainant, D.W., thus necessitating the State to specify the acts of recklessness. (Appellant's Brief at 17) While the State's information does allege a reckless mental state, Appellant fails to acknowledge that the State pled two additional mental states in the information. The amended information charged that Appellant "did then and there *intentionally, knowingly, and recklessly* cause bodily injury to another." (1 CR at 45) (emphasis added)

As such, *Castorena v. State* is controlling. 486 S.W.3d 630 (Tex. App.—San Antonio 2016, no pet.). In its opinion in *Castorena*, this Court acknowledged that

the holding of the Court of Criminal Appeals is clear—"an indictment that alleges a defendant acted recklessly is not insufficient if it fails to allege the act or acts relied upon to constitute recklessness if the indictment also alleges the defendant acted intentionally and/or knowingly." *Castorena*, 486 S.W.3d at 635 (citing *Crawford v. State*, 646 S.W.2d 936, 937 (Tex. Crim. App. 1983)).

Appellant argues that this Court's decision in *Castorena* is distinguishable from the instant case because of a statement the State made during jury selection and language included in the jury charge. The prosecutor's statement and the complained-of language in the jury charge have nothing to do with specifying the acts constituting recklessness in the charging document. Instead, Appellant's contentions concern what is a well settled part of the law—that the State is permitted to charge in the conjunctive and prove in the disjunctive. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (citing *Vasquez v. State*, 665 S.W.2d 484, 466-467 (Tex. Cr. App. 1984)). Thus, neither of Appellant's arguments for distinguishing *Castorena* demonstrate any difference between the facts in *Castorena* and the instant case.

Because here, as in *Castorena*, "the State, in addition to alleging [Appellant] acted recklessly, alleged [he] acted intentionally or knowingly, it was not required under Article 21.15 to allege the act or acts relied upon to constitute recklessness."

7

*Id.* at 635 (internal citations omitted). As such, the trial court properly denied Appellant's motion to quash and its judgment should be affirmed.

## Second Point of Error

At trial, Appellant attempted to offer evidence of an incident that occurred a few months prior to the incident giving rise to the State's case. In his second point of error, Appellant challenges the trial court's decision to exclude that evidence, arguing that the court erred in not allowing the evidence because it was admissible to show the reasonableness of Appellant's self-defensive state of mind. (Appellant's Brief at 22)

While the trial court may have erred in excluding the evidence at trial, any error did not affect Appellant's substantial rights, and as such, does not warrant reversal. Because sufficient evidence established Appellant struck the complainant out of anger and not self-defense and further, Appellant was still able to advance evidence of his self-defense claim at trial, any error resulting from the trial court's exclusion of the evidence was harmless.

### *Relevant Facts*

Appellant wanted to introduce evidence regarding an incident that happened between Appellant and D.W. in September 2015 at trial. When the trial court denied his request to introduce the evidence, Appellant made a bill of exceptions. Essentially, Appellant's bill of exceptions testimony established the following.

Appellant testified that his wife and D.W.'s mother, Schernette Patrick ("Shawn") had confronted D.W. about something and D.W. began balling up his fists. (6 RR at 5) Appellant thought D.W. might hit Shawn, so he stepped in between them and D.W. punched him in the mouth. (6 RR at 6) Appellant called police, who arrested D.W., and he was held for three weeks before his release.[3] (6 RR at 6-7) Appellant characterized Appellant's manner during the September 2015 incident as different from his manner during the February 2016 incident. Appellant stated, "[i]t was different as he, you know, clinched his fists up, bring his arms up demonstrating like he's fixing to punch and drew back and before that point." (6 RR at 8)

The police report established that on September 26, 2015, officers from the San Antonio Police Department ("SAPD") were dispatched to 3039 Reforma Drive. (7 RR at 81-82) Appellant told officers that Shawn had confronted him about smoking and D.W. began acting in a threatening manner. (7 RR at 82) Appellant said that, based on what he saw, he thought D.W. might strike Shawn, so he stepped in between them and grabbed D.W. in an attempt to restrain him. (7 RR at 82) While Appellant was holding D.W., D.W. punched him on the face and lower lip. (7 RR at 82) Appellant sustained injuries from the punch and officers

---

[3] It is not clear from the record whether D.W. was ever formally charged with or convicted of any conduct relative to this incident.

9

observed blood coming from his lower lip and mouth. (7 RR at 82) D.W. was taken to Youth Services and later transported to Juvenile Detention. (7 RR at 82)

### *Standard of Review*

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). This Court may not reverse a trial court's ruling unless "it falls outside the zone of reasonable disagreement." *Id.* If a trial court's decision is correct under any theory of law, the decision should not be disturbed even if the trial court gave the wrong reason for its ruling. *See Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990).

### *Applicable Law*

Admissibility of Character Evidence

Generally, character evidence is inadmissible at trial, but when a defendant has been charged with an assaultive offense, he is permitted to introduce evidence regarding the victim's character at trial. Tex. R. Evid. 404(a) and 404(a)(2)(A); *Martinez v. State*, 17 S.W.3d 677, 687 (Tex. Crim. App. 2000); *Torres*, 71 S.W.3d at 760. A defendant, however, is not permitted to introduce evidence of either a victim's violent character or specific instances of violent conduct to prove "that on a particular occasion the person acted in accordance with the character or trait." Tex. R. Evid. 404(a) and (b).

10

The rules of evidence allow for the introduction of evidence of a victim's specific acts of violence under two theories. *Ex parte Miller*, 330 S.W.3d 610, 618 (Tex. Crim. App. 2009). The first theory, where the evidence is offered to clarify who was the "first aggressor," examines the victim's conduct. *Allen v. State*, No. 14-13-01030-CR, 2015 Tex. App. LEXIS 8144, at *76 (Tex. App.—Houston [14th Dist.] August 4, 2015, no pet.) (McCally, J., concurring). Under the second theory, the evidence is offered to demonstrate the reasonableness of the defendant's fear of the victim and focuses on the defendant's state of mind. *Id.* Under either theory, however, specific, violent acts of misconduct are only admissible to the extent they are relevant for any purpose other than character conformity. Tex. R. Evid. 404(b); *Torres*, 71 S.W.3d at 760; *Tate v. State*, 981 S.W.2d 189, 193 (Tex. Crim. App. 1998).

Under the second theory, a defendant may offer evidence of specific prior instances of violence by the victim to demonstrate the reasonableness of his claim of apprehension of danger from the victim. *Torres*, 71 S.W.3d at 760, n.4 (citing *Mozon v. State*, 991 S.W.2d 841, 846 (Tex. Crim. App. 1999)). When evidence is offered for this purpose, Rule 404 is not invoked because "the defendant is not trying to prove that the victim actually is violent; rather, he is proving his own self-defensive state of mind and the reasonableness of that state of mind." *Miller*, 330

S.W.3d at 618-19. This so-called "communicated character evidence," requires the defendant to establish that he was aware of the victim's violent character. *Id.*

Harm Analysis

The erroneous exclusion of evidence is generally nonconstitutional error and subject to analysis under Rule of Appellate Procedure 44.2(b). *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). Nonconstitutional error which does not affect a defendant's substantial rights is disregarded. *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007). A conviction will not be reversed for nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Id.* In making a determination regarding harmless error, the presence of overwhelming evidence supporting the conviction can be a factor in a court's evaluation of error under Rule 44.2(b). *Rodriguez v. State*, No. 04-12-00859-CR, 2013 Tex. App. LEXIS 14876, at *6-7 (Tex. App.—San Antonio December 11, 2013, no pet.) (mem. op., not designated for publication) (citing *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002)).

***Application of Law to the Present Record***

At trial, Appellant sought to introduce evidence of the September 2015 incident to prove the reasonableness of his own defensive state of mind. (3 RR at

12

24-25, 30, 32 4 RR at 151, and 6 RR at 9-10) The State objected to the evidence and the trial court excluded same at trial. (3 RR at 29 and 6 RR at 10-12). The basis for the trial court's ruling is unclear from the record. At first, it appears the trial court's ruling was predicated on the fact that the event occurred when D.W. was a juvenile. (4 RR at 8-10) The court later indicated, however, its ruling was based on the remoteness of the incident and Texas Rule of Evidence 404's prohibition against character evidence introduced to show conformity. (6 RR at 11-12)

The State acknowledges that the evidence in question constituted communicated character evidence and was admissible for the limited purpose of establishing the reasonableness of Appellant's self-defensive state of mind. While the court erred in excluding the evidence at trial, any error was harmless for two reasons. First, much of the evidence at trial established Appellant struck D.W. out of anger and not self-defense. Second, there was sufficient evidence adduced at trial regarding Appellant's claim of self-defense; thus, Appellant was not harmed by the exclusion of the evidence regarding the prior incident.

Evidence That Appellant Acted out of Anger and not Self-Defense

Here, as in *Rodriguez v. State*, the evidence at trial demonstrated not that Appellant acted in self-defense but that he struck D.W. out of anger because D.W. disrespected him. 2013 Tex. App. LEXIS 14876 at *1. As such, the trial court's

13

error in excluding the complained-of evidence did not affect Appellant's substantial rights.

Evidence proving Appellant's motivation behind striking D.W. came from three sources—his own testimony, statements he made at the scene, and messages he sent to his wife, Shawn, after the incident.

*Appellant's Testimony*

Appellant testified at trial. Appellant said that on February 11, 2016, he stayed in his bedroom most of the morning. (4 RR at 144) At about 1:30 p.m., Appellant said he smelled cigarette smoke when he went to use the restroom and knew D.W. was smoking outside the front door. (4 RR at 144) The evidence at trial established that Appellant had previously asked D.W. not to smoke on the porch. (5 RR at 4-5 and 7 RR at 20) Appellant admitted that he became upset when he smelled cigarette smoke, so he decided that when D.W. came into the house, he would confront him about it. (4 RR at 147 and 5 RR at 7-8)

Eventually, Appellant heard the door close and he walked upstairs to confront D.W. (4 RR at 147and 5 RR at 4) Appellant admitted that he walked up the stairs to get closer to D.W. before confronting him. (5 RR at 11) Appellant asked D.W. "[w]hy are you still doing the same thing I asked you not to do?" (5 RR at 4) Appellant also asked D.W. "[a]re you listening? Did you really listen to what I asked you yesterday, and you did it again?" as he approached him. (5 RR at

4-5) D.W. told Appellant he did not have to listen to him and Appellant asked D.W. to leave. (4 RR at 149 and 5 RR at 5)

On cross examination, Appellant admitted that D.W. had disrespected him and it made him angry. (5 RR at 13) Appellant stated that his left hand "just reacted" to D.W.'s behavior. (4 RR at 150 and 5 RR at 5) Appellant struck D.W. so hard that D.W. was knocked unconscious. (5 RR at 5) Appellant testified that once he struck D.W., he stepped to the side and D.W. fell down the stairs. (5 RR at 5 and 11) Appellant said he made no attempt to break D.W.'s fall or otherwise prevent him from falling down the stairs. (5 RR at 15) When officers arrived, Appellant told them that D.W. had disrespected him and said he had to "pour a cup of water to wake his ass up." (4 RR at 97, 5 RR at 13-14, and State's Exhibit 23-Part 001 4:55-5:02)

*Appellant's Statements at the Scene*

At the scene, Appellant explained to the officers from the San Antonio Police Department ("SAPD") that he—

> Asked [unintelligible] several times to quit smokin' in front of my doorway. Done it yesterday. Done it today. He wanna sit up here and act like he don't listen to what I'm sayin' and I'm the parent, I'm the one up in this house, me and my wife and he don't wanna listen. I had to put it on his ass [unintelligible]. He wanna act hard. I showed him hard. So, if y'all gonna arrest me for doing that, y'all may well go on and arrest me. 'Cause I done told him several times to quit smoking sittin' right here. (State's Exhibit 21-Part 002 at 1:37-2:08)[4].

---

[4] All time stamps correspond to the videos' time stamps when played in Windows Media Player.

After this initial statement, the officer asked D.W. what he was smoking and the parties had the following exchange:

> Officer: What you smokin' man?
> D.W.: [unintelligible]
> Appellant: I asked you several times like a couple days…
> Shawn: Really!
> Appellant: …ago. Yeah really!
> D.W: I didn't even do nothin'!
> Appellant: What did you do when I asked you yesterday?
> Shawn: [unintelligible] I want to press charges. If he did this to…
> Appellant: Press charges. I don't care!
> Shawn: my son…
> Appellant: You damn right 'cause I asked you not to smoke right here! (State's Exhibit 21- Part 002 at 2:09-2:28)

Appellant further explained D.W. was—

> smokin' a cigarette right there on my staircase and I'm smellin' it as I'm comin' up the steps…. Now I asked him yesterday. He did it again yesterday…Yeah, he lives here… but he don't wanna listen… He *don't* wanna listen. Point blank… I asked him to smoke just right here in the driveway… Now, he don't wanna listen? Go ahead, take me in. (State's Exhibit 21- Part 002 at 4:52-5:14 and State's Exhibit 23- Part 001 at 1:53-2:14) (emphasis added)

Appellant was clearly upset regarding the cigarette smoke as he again told officers that he "asked [D.W.] several times to quit smokin' in front of the stairs 'cause the smoke comes right in the house… I don't like smellin' cigarette smoke. (State's Exhibit 23- Part 001 at 4:14-4:23) Appellant even told the 911 operator that he had repeatedly asked D.W. not to smoke in front of the doorway. (State's Exhibit 7 at 0:12-0:17)

16

Appellant also told officers that D.W. wanted to "act grown," that Shawn let him do "what the [expletive] he wants," including smoke marijuana, and that D.W. had no life. (State's Exhibit 21- Part 002 at 6:03-6:17) Appellant explained that D.W. wanted to "[d]o what he want, he think he grown I did…Told his ass yesterday, he did it. Sittin' right there. Then he did it again today. Act like he don't wanna hear me?" (State's Exhibit 21- Part 002 at 6:18-6:30) Appellant reiterated "just let 'em do what the hell they wanna do…what's wrong with him now. (State's Exhibit 23-Part 001 at 4:31-4:37)

Shortly before he was placed in the back of SAPD Officer Cuellar's patrol car, Appellant told officers that "he the only one in the house I have to deal with hard because he don't wanna listen. All the rest of 'em listen. I ain't gotta do all that." (4 RR at 97 and State's Exhibit 23- Part 001 at 6:28-6:38) Appellant concluded by saying he was not "gonna have [D.W.] keep disrespecting me in my damn house." (State's Exhibit 23- Part 001 at 6:52)

*Messages Sent to Shawn*

The State introduced messages between Appellant and Shawn after the incident. (7 RR at 20 and 22) In these messages, Appellant says, "Come get your son ask not to smoke in front door an he done a again (sic)." (7 RR at 20) After Shawn responded, "Ok," Appellant told her that the police and ambulances were on the way to the home. (7 RR at 20) When Shawn asked Appellant what he had

17

done, Appellant stated, "[s]ee it for yourself" and "[s]ee you when I get out jail later (sic)." (7 RR at 22)

Thus, the record is clear that Appellant did not like when D.W. smoked in front of the house, that smoking had been a continuing source of conflict, and that Appellant had asked D.W. not to smoke in front of the home the day before the incident occurred. Appellant admitted he became upset when he smelled cigarette smoke on February 11, 2016 and said that he waited for D.W. to finish smoking so that he could confront him.

Appellant's testified that when he heard D.W. come inside, he got physically close to him and then repeatedly asked D.W. why he had disobeyed him. When D.W. disrespected Appellant by responding that he did not have to listen to him, a physical confrontation ensued. Appellant said that his left hand "just reacted," causing him to knock D.W. unconscious and fall down the stairs. Appellant testified he did not attempt to stop D.W. from falling down the stairs.

Appellant's anger is apparent in State's Exhibit 21 when he begins yelling at D.W. in front of the officers. Even Appellant concedes in his brief that the "two police COBAN recordings… captured [Appellant] at a time of extreme agitation." (Appellant's Brief at 24) Appellant's own statements to officers at the scene corroborated that he had struck D.W. out of anger and not self-defense. Appellant repeatedly told the officers that D.W. did not want to listen to him and he was

18

allowed to do whatever he wanted. Appellant also commented that he was not going to continue to let D.W. disrespect him in his own house.

Aside from reiterating that D.W. had disobeyed and disrespected him, Appellant made additional statements that indicated he was teaching Appellant a lesson rather than acting in self-defense. Appellant said that D.W. wanted to act hard, so he "showed him hard." Appellant said that D.W. was in the "only one in the house" he had to "deal with hard" because he did not want to listen to Appellant.

Appellant's statements to Shawn did not mention that he feared for any physical danger from D.W. and only mentioned that D.W. had smoked outside of the home again. Appellant's statement that he would see Shawn when he got out of jail also demonstrated that he knew he had done something wrong rather than acted in self-defense. Appellant even mentioned that D.W. had disobeyed him by smoking in front of the house on the 911 call.

Here, the evidence at trial established that Appellant had struck D.W. out of anger, rather than out of concern for or a threat of physical harm. Given the overwhelming evidence that Appellant struck D.W. out of anger and not self-defense, any error resulting from the trial court's exclusion of the complained-of evidence did not have a substantial or injurious effect or influence on the jury's verdict. *See Rodriguez*, 2013 Tex. App. LEXIS 14876 at *7 and *10 (concluding

that "[t]he nature of the testimony supports the conclusion that Rodriguez slapped Mireles not out of fear of bodily harm, but rather out of anger" and holding that the trial court's exclusion of the evidence was harmless error). Appellant's second point of error should be overruled.

Evidence Establishing Self-Defense

Appellant advanced a self-defense claim at trial. Though the trial court did not permit Appellant to introduce evidence regarding the September 2015 incident, Appellant introduced sufficient evidence to support his self-defense claim at trial. Because Appellant put forth enough evidence of his self-defense claim at trial, the trial court's error in excluding evidence of the September 2015 incident was harmless.

The evidence supporting Appellant's self-defense claim came from his testimony and from statements he made to the 911 operator and officers at the scene.

*Appellant's Testimony*

Appellant said that D.W. got upset when he asked him to leave. (5 RR at 5) Appellant stated that when he started getting closer to D.W., D.W. "actually got…real aggressive with me to where he balled up his fists and started coming

towards me." (4 RR at 150) Appellant testified that D.W. raised his arms as if to punch him and drew back. (4 RR at 150-51)[5]

When asked what Appellant thought was going to happen, Appellant responded, "I felt like I was being hit – going to get hit, so I reacted before he did." (4 RR at 150) Later, Appellant testified that D.W. did actually swing at him. (5 RR at 5) Appellant stated numerous times that D.W. "started to punch and my left hand react." (4 RR at 150 and 5 RR at 5) When Appellant saw that D.W. was bleeding, he poured a cup of water on his face to rouse him. (5 RR at 5-6) Appellant then called paramedics. (5 RR at 6)

*Appellant's Statements*

Appellant also told officers that D.W. "pumped up to him and he said he swung, he ducked, and I hit him." (4 RR at 97-98) Appellant summarized the incident, saying "he bucked up on me and I told him you, you, you got somethin' coming. He swung, he ducked, I hit… Yep, he caught the wall… Yeah, one blow… I had to pour water on his ass to wake him up. (State's Exhibit 23- Part 001 4:40-5:02) During the 911 call, Appellant stated that he had a "young man that tried to do some harm to" him. (State's Exhibit 7 at 0:06-0:12)

Appellant alleges that introduction of the September 2015 evidence was necessary because the jury only received little "hints" regarding Appellant's self-

---

[5] During the bill of exceptions, Appellant testified that D.W.'s behavior during this confrontation differed from his behavior during the September 2015 incident. (6 RR at 8)

defense claim during the State's case, so that he had to develop his justification defense in his testimony. (Appellant's Brief at 20) Appellant further argues that without the evidence regarding the September 2015 incident, his actions "must have appeared completely unjustified to the jury," however, sufficient evidence of justification was introduced at trial. (Appellant's Brief at 23)

The jury heard testimony that before Appellant struck D.W., D.W. began coming toward him aggressively and balled up his fists. Appellant testified that, from his perspective, D.W. appeared as if he was going to strike him, so he reacted by striking him first. Jurors also heard Appellant's statements to officers at the scene that D.W. had "bucked up to him" and that D.W. had swung at Appellant. Appellant received a jury charge regarding self-defense and Appellant's counsel argued same at closing. (5 RR at 22, 28, and 39-42)[6]

Thus, there was sufficient evidence before the jury which would have allowed them to consider Appellant's self-defense claim. Because Appellant was still permitted to advance his self-defense claim at trial even without the proffered evidence, any error resulting from the trial court's exclusion of same was harmless. Appellant's second point of error should be overruled.

---

[6] After hearing all of the evidence at trial, the jury was free to believe that Appellant did not act in self-defense and, instead, struck D.W. out of anger. In light of all of the evidence adduced at trial, the jury was in the best position to determine whether Appellant acted out of anger or whether Appellant was acting in self-defense on February 11, 2016 and their finding should not be disturbed on appeal.

**Third Point of Error**

In his third point of error, Appellant contends the trial court erred when it implicitly overruled his objection to the trial court's order that restitution be determined by the probation department. Appellant argues he was entitled to a restitution hearing before the court.

A trial court is not permitted to delegate its authority to impose conditions of community supervision. As such, the trial court abused its discretion by ordering restitution without ordering an amount or designating a payee of same. The State agrees that the proper remedy is to remand this cause for a restitution hearing before the trial court.

*Standard of Review*

On appeal, challenges to restitution orders are reviewed under an abuse of discretion standard. *Lemos v. State*, 27 S.W.3d 42, 45 (Tex. App.—San Antonio 2000, pet. ref'd) (citing Cartwright *v. State*, 605 S.W.2d 287, 288-89 (Tex. Crim. App. 1980)). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)).

*Applicable Law and Application of Law to the Present Record*

The authority to impose conditions of probation on a defendant rests solely with the trial court and cannot be delegated to the probation department or anyone

else. Tex. Code Crim. Proc. art. 10(a) (West 2015); *DeLeon v. State*, 466 S.W.2d 573, 574 (Tex. Crim. App. 1971). The State acknowledges that because the trial court is not permitted to delegate its authority to impose conditions of probation, it abused its discretion when it ordered "medical restitution, if any," as a condition of Appellant's probation without determining the amount or recipients of same.

As such, the State agrees with Appellant's contention that the proper remedy is to remand the case to the trial court for a restitution hearing in order to determine the proper amount of restitution. *See Burt v. State*, 445 S.W.3d 752, 761 (Tex. Crim. App. 2014) (holding that "it is appropriate to remand a case for a restitution hearing when it is clear during the sentencing hearing that restitution will be ordered, but the amount or recipients of restitution are not orally pronounced.").

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the State of Texas submits that the judgment of the trial court should, in all things, be AFFIRMED and that this Court should remand the cause for a determination on restitution.

Respectfully submitted,

NICHOLAS "NICO" LAHOOD
Criminal District Attorney
Bexar County, Texas

*/s/ Jennifer Rossmeier Brown*

_____

Jennifer Rossmeier Brown
Assistant Criminal District Attorney
Bexar County, Texas
Paul Elizondo Tower
101 W. Nueva Street
San Antonio, Texas 78205
Phone: (210) 335-1546
Email: jennifer.rossmeier@bexar.org
State Bar No. 24079247

*Attorneys for the State*

## CERTIFICATE OF SERVICE AND COMPLIANCE

I, Jennifer Rossmeier Brown, hereby certify that the total number of words in appellee's brief is 6,169. I also certify that a true and correct copy of the above and foregoing brief was served on the attorney of record on the 5th day of October, 2016 in the manner described below:

***Via E-Mail***
Michael D. Robbins
101 W. Nueva St., Suite 370
San Antonio, Texas 78205
mrobbins@bexar.org


*/s/ Jennifer Rossmeier Brown*
_____
Jennifer Rossmeier Brown
Assistant Criminal District Attorney