**Opinion issued February 10, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00134-CR

———————————

**DEMONTAE LAVON WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1700211**

---

## MEMORANDUM OPINION

Appellant Demontae Lavon Williams was convicted by a jury of capital murder for causing the deaths of Jailyn Page and Bryce Goddard. *See* TEX. PENAL CODE § 19.03(a)(7)(A) (defining capital murder as intentionally causing the death

of more than one person in the same criminal transaction). The trial court sentenced Williams to confinement for life without the possibility of parole.

On appeal, Williams contends that the court erred in excluding evidence of a complainant's gang affiliation and that doing so violated his constitutional right to present a defense. He also argues that the jury charge was erroneous.

We affirm.

**Background**

Williams went to a nightclub in Houston planning to perform at its "open mic" night. Williams was accompanied by his brother LeDadrine Hall, his cousin Ambra Johnson, and Ambra's husband Micha Coleman. Hall and Williams were armed with guns when they went into the club.[1]

When they got inside, Williams and Hall noticed Goddard, Page, and Sir Mitchell near the bar. A month prior, Hall and Mitchell had an altercation at a gas station convenience store that was broken up by a security guard. Hall recognized Goddard as a person he had seen in a photograph with another person known as "Baby Trap." Baby Trap had shot Hall a year before.

---

[1] Williams testified that he brought his gun into the club after Coleman decided to carry his gun.

Hall and Mitchell started arguing with each other from across the room.[2] Mitchell walked up to Hall, and they continued exchanging words. Ambra Jones (appellant's cousin) heard Mitchell yell, "We're going to catch you after the show." Mitchell then went to the bar, removed his jacket, and moved toward Hall in a fighter's stance with his fists raised. Goddard attempted to intervene, grabbing Mitchell and pushing him back toward the bar. Hall drew his gun, pointing it at Mitchell. At the same time, a security guard at the club rushed in and stepped between the two groups. He yelled, "We're not doing this tonight," and grabbed Hall, trying to move him to the exit. Hall momentarily slipped out of the guard's grasp.

Hall shot Mitchell and Page, both of whom were unarmed. Mitchell and Page fell to the floor. Goddard, who was unarmed, rushed at Hall while Hall was tussling with the security guard. Williams immediately shot Goddard. Goddard turned and ran to the other side of the club. Williams continued shooting at him. Williams then pointed his gun at the security guard, who was still trying to contain Hall. According to the security guard, Williams threatened to shoot him unless he released Hall. The security guard complied, and Hall and Williams ran out of the club. They fled the scene.

---

[2]  In addition to testimony from Jones, a security guard, and Williams, the jury watched the club's security video of the altercation and shootings.

When law enforcement responded, they found four victims on the nightclub floor. Mitchell was still conscious and had five gunshot wounds. He was transported to the hospital. He eventually recovered from his injuries, but he refused to provide any information to the police about the shooting. Page and Goddard were pronounced dead at the scene, each had sustained two gunshot wounds. A fourth victim, who was a nightclub patron uninvolved in the altercation, was struck in the head by an errant bullet and died at the scene.

No weapons were recovered at the scene. Law enforcement recovered cartridge casings inside the nightclub. Bullets were recovered during autopsies of the three deceased men and from medical staff who attended to Mitchell. The Houston Forensic Science Center matched the cartridges found at the scene to the bullets found in the victims. A few months later during a routine traffic stop, law enforcement recovered a semiautomatic pistol used in the shooting.

Williams testified at trial.[3] He stated that he heard Mitchell yell from across the bar, "Y'all ain't going to make it out the club." He interpreted Mitchell's statement to mean that someone was going to get hurt that night.

Williams testified that Mitchell first approached, getting face-to-face with Hall. Williams drew his gun to make Mitchell back off. He thought the situation

---

[3] Identity was not at issue at trial. Instead, Williams's theory at trial was that he shot Goddard in self-defense because he was concerned for Hall's life.

was resolved when the security guard began escorting Hall out, but then he heard gunshots.

Williams testified that he saw Goddard coming towards Hall, feared for his brother's life, then shot Goddard and continued shooting at him even after Goddard turned and attempted to flee. Williams then ran to check on Hall. Williams disputed the security guard's testimony that he had threatened to shoot him if he did not let Hall go. Hall and Williams fled the scene. In the days after the incident, he changed his appearance by cutting his hair and sold the gun he used on Facebook.

Williams was charged with capital murder for causing the death of two individuals in the same criminal episode. The jury charge explained that the jury was required to find Williams guilty of capital murder if it found beyond a reasonable doubt that (1) Hall caused the death of Page by shooting him with a deadly weapon; (2) Williams, promoting or assisting in the commission of that offense, aided or encouraged Hall in Page's killing; (3) Williams shot and killed Goddard;[4] and (4) Williams was not justified in using deadly force. The jury convicted Williams of capital murder, and he was sentenced to life without parole. Williams appealed.

---

[4] The charge allowed the jury to convict Williams of capital murder if, in the alternative, it found that Williams caused Page's death. But the facts that Hall shot and killed Page and Williams shot and killed Goddard were not in dispute at trial.

## Exclusion of Evidence

In his first three issues, Williams contends that the trial court abused its discretion by excluding testimony that Goddard was a gang member. The trial court excluded testimony from law enforcement that Goddard was known to be a gang member. The State stipulated to Williams's proffer that, if recalled, a law enforcement officer would testify that Goddard was a documented gang member.

On appeal, Williams argues that the evidence was relevant and admissible to support his self-defense theory.[5] He also argues that his constitutional rights were violated by the exclusion of the evidence because he could not adequately present his defense. We disagree.

### A. Standard of Review

The trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024). We may not reverse the trial court unless the trial court's ruling was so clearly erroneous as to fall outside the "zone of reasonable disagreement." *Id.* (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)).

---

[5] A person is justified in using deadly force against another when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force, and a reasonable person in the defendant's situation would not have retreated. *See* TEX. PENAL CODE §§ 9.31 (self-defense), 9.32 (deadly force in defense of person).

**B.     Self-Defense**

In general, character evidence may not be used to prove that the person "behaved in a particular way at a given time." *Tate v. State*, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998); *see* TEX. R. EVID. 404(a); *see also Allen v. State*, 473 S.W.3d 426, 444 (Tex. App.—Houston [14th Dist.] 2015), *pet. dism'd*, 517 S.W.3d 111 (Tex. Crim. App. 2017). But the limit on character evidence is not absolute. *Allen*, 473 S.W.3d at 444; *see also Alfred v. State*, No. 01-18-00222-CR, 2019 WL 2588102, at *2 (Tex. App.—Houston [1st Dist.] June 25, 2019, no pet.) (mem. op., not designated for publication). When a defendant is charged with an assaultive offense, the rules of evidence permit the defendant to offer evidence concerning the victim's character for violence. *See* TEX. R. EVID. 404(a)(3); *Ex parte Miller*, 330 S.W.3d 610, 618–19 (Tex. Crim. App. 2009); *Torres v. State*, 117 S.W.3d 891, 894 (Tex. Crim. App. 2003). The evidence may still be excluded if it is substantially more prejudicial than probative. *See* TEX. R. EVID. 403.

Williams argues that the trial court erred in excluding evidence that Goddard was a gang member for two reasons related to his self-defense theory. First, Williams contends the evidence was admissible and relevant to support that Goddard was the first aggressor, and second, Williams argues the evidence was admissible and relevant to show Williams's reasonable belief that he was

endangered, justifying his use of deadly force against Goddard. We address each in turn.

## 1. First Aggressor

Williams first complains that the trial court erred in excluding evidence that Goddard was a documented gang member because it proves that Goddard and Mitchell were the first aggressors.

A defendant who raises the issue of self-defense may introduce evidence of a complainant's character trait for violence pursuant to Rule 404(a) to show that the victim was, in fact, the first aggressor. *See* TEX. R. EVID. 404(a); *Ex parte Miller*, 330 S.W.3d at 620. Character evidence introduced to prove the victim's status as first aggressor is called "uncommunicated character evidence" because "it does not matter if the defendant was aware of the complainant's violent character." *Allen*, 473 S.W.3d at 444 n.11 (quoting *Ex parte Miller*, 330 S.W.3d at 619). While admissible under Rule 404, the evidence may only be offered in the form of reputation or opinion testimony. *See* TEX. R. EVID. 405(a)(1) (limiting character evidence to reputation or opinion testimony).[6] The victim's prior specific acts of violence may also be admissible for the non-character purposes, such as proof of

---

[6] "The chain of logic is as follows: a witness testifies that the victim made an aggressive move against the defendant; another witness then testifies about the victim's character for violence, but he may do so *only* through reputation and opinion testimony under Rule 405(a)." *Ex parte Miller*, 330 S.W.3d 610, 619 (Tex. Crim. App. 2009).

his specific intent, motive for an attack on the defendant, or hostility. *Ex parte Miller*, 330 S.W.3d at 620.

The trial court did not err in excluding the gang membership evidence to show Goddard was the first aggressor because the proffered testimony that Goddard was a gang member is not reputation or opinion testimony and is therefore inadmissible under Rule 405(a). *See Allen*, 473 S.W.3d at 445–46 (stating trial court did not err in excluding testimony of victim's gang affiliation because testimony appellant knew complainant was gang member was not reputation or opinion testimony). Moreover, Williams has not outlined how the fact that Goddard was a gang member explains Goddard's aggressive conduct in a manner other than one that assumes character conformity. *Id.*; *see* TEX. R. EVID. 405. Without any proffered testimony concerning the gang's propensity for violence, the trial court could have reasonably excluded the testimony because it would not have constituted a prior specific act of violence that would have aided the jury in determining whether Goddard or Williams was the first aggressor. *Baker v. State*, No. 05-19-01051-CR, 2021 WL 1826829, at *5 (Tex. App.—Dallas May 7, 2021, pet. ref'd) (mem. op., not designated for publication) (holding trial court could exclude proffered testimony that victim's mention of "Bloods" in verbal threat referred to gang because without more it did not aid jury in determining first aggressor).

We conclude that the trial court acted within its discretion in excluding evidence of Goddard's gang membership when offered to establish Goddard's status as first aggressor because Williams did not establish that the proffered evidence clarified who the first aggressor was in a manner other than demonstrating Goddard's conformity with violent character. *See Allen*, 473 S.W.3d at 447.

## 2.     Apprehension of Danger

Williams contends that the trial court erred in excluding evidence of Goddard's gang membership because it showed that William's fear of Goddard was reasonable.

A murder defendant arguing self-defense may offer evidence, pursuant to Rule 404(b), that he was aware of the victim's specific acts of violence to show the defendant's reasonable apprehension of danger from the victim. *See* TEX. R. EVID. 404(b); *Ex parte Miller*, 330 S.W.3d at 618; *Allen*, 473 S.W.3d at 447; *Vasquez v. State*, 67 S.W.3d 229, 239–40 (Tex. Crim. App. 2002) (holding evidence of gang membership evidence is admissible under Rule 404(b) if relevant to show non-character purpose that tends to show commission of crime). This is called "communicated character" evidence because the defendant knows of the complainant's violent tendencies and sees a danger posed by the complainant,

regardless of whether that danger is real. *See Ex parte Miller*, 330 S.W.3d at 618–19 (internal quotations omitted).[7]

The State responds that Williams did not preserve this issue for appeal because he did not argue in the trial court that gang membership evidence was admissible to show his own apprehension of Goddard. *See* TEX. R. APP. P. 33.1(a). We need not address the State's preservation argument because even if we assume appellant's complaint was preserved, there is no reversible error.

Neither the proffered evidence nor the record demonstrates whether Williams knew that Goddard was a gang member. The proffered evidence has no bearing on the reasonableness of Williams's fear or the justification for his use of deadly force in self-defense against Goddard. The evidence does not suggest that the bare fact that Goddard was a gang member would have made it more reasonable for Williams to fear a threat of immediate danger from him.

---

[7] *See Phillips v. State*, No. 14-15-00870-CR, 2017 WL 2152452, at *4 (Tex. App.—Houston [14th Dist.] May 16, 2017, pet. ref'd) (mem. op., not designated for publication) ("Under this theory, a defendant is not trying to prove that the [complainant] actually [was] violent; rather, he is proving his own self-defensive state of mind and the reasonableness of that state of mind."). For example, when the complainant in a murder case is unarmed, the defendant's claim of self-defense rests on a perceived danger, which is "frequently based on a furtive gesture that can only be regarded as a threat when it is considered in light of the [complainant's] reputation for violence." *Fry v. State*, 915 S.W.2d 554, 560 (Tex. App.—Houston [14th Dist.] 1995, no pet.)

### 3. Rule 403

Additionally, the trial court could have reasonably determined that even if the gang affiliation evidence was admissible as evidence that Goddard was the first aggressor or of the reasonableness of Williams's apprehension of danger, it was nevertheless inadmissible because it was unfairly prejudicial. *See* TEX. R. EVID. 403. Evidence admissible under rules 404 and 405 may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. *Id.*; *Baker*, 2021 WL 1826829, at *6 (noting that murder victim's gang tattoos are "highly inflammatory character evidence and are extremely prejudicial).[8] The trial court was within its discretion to conclude that the proffered evidence was inadmissible under rule 403 because it was substantially more prejudicial than probative.

### C. Due Process

Finally, Williams argues that the trial court's erroneous decision to exclude evidence of Goddard's gang membership denied him a meaningful opportunity to

---

[8] *See e.g.*, *Smith v. State*, 355 S.W.3d 138, 154–55 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (holding text of deceased complainant's "CRIP LIFE" and "GANGSTAFIED" tattoos properly redacted from autopsy report because defendant presented no evidence he was aware of complainant's tattoos or that possible gang affiliation affected defendant's state of mind during altercation; or that dispute was gang related).

present a complete defense. He argues that without evidence of Goddard's gang affiliation, the jury "could not fully appreciate Goddard's violent tendencies."

Evidentiary rulings rarely rise to the level of denying the fundamental constitutional right to present a meaningful defense. *Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002); *Smith v. State*, 355 S.W.3d 138, 154 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). "Rulings excluding evidence might rise to the level of a constitutional violation if . . . a trial court's clearly erroneous ruling excluding evidence that forms such a vital portion of the case effectively precludes the defendant from presenting a defense." *Smith*, 355 S.W.3d at 154 (citing *Potier*, 68 S.W.3d at 659–62).

Because the trial court did not erroneously exclude evidence, no constitutional error occurred. *See Potier*, 68 S.W.3d at 663. Even assuming the trial court's evidentiary ruling was erroneous, the exclusion of gang affiliation evidence did not deprive Williams of the opportunity to present his self-defense theory. Williams testified that he knew Goddard associated with someone named "Baby Trap" who had shot his brother a year earlier. He testified that he was worried that "Baby Trap" might be at the club with Goddard. He said that Goddard smirked at him and his brother before the altercation, Goddard was with Mitchell at the bar, and Mitchell threatened Williams that he and Hall would not "make it out the club." Willams testified that he feared for his brother's life when he saw Goddard

13

moving towards Hall right before the gunfire started. Even without evidence of Goddard's gang affiliation, Williams was able to present his defensive theory that he acted in defense of his brother's life. Therefore, any error is not constitutional.

Because the error, if any, did not have a substantial and injurious effect or influence in the jury's rejection of appellant's self-defense claim, it must be disregarded. *See* TEX. R. APP. P. 44.2(b); *Phillips v. State*, No.14-15-00870-CR, 2017 WL 2152452, at *6 (Tex. App.—Houston [14th Dist.] May 16, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding any error in exclusion of evidence was not constitutional because it did not deprive defendant of presenting his defensive theory and must be disregarded under Rule 44.2(b)).

***

In summary, we conclude that the trial court did not err in excluding testimony of Goddard's gang membership offered in support of Williams's self-defense theory. Appellant's first three issues are overruled.

**Jury Charge Error**

In his fourth and final issue, Williams argues that the trial court erred by refusing to instruct the jury that it could consider the prior relationship between him and Mitchell. The State argues that this issue was not preserved for our review. Even assuming arguendo that the issue was preserved, the jury charge was not erroneous.

14

We review an alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985 (op. on reh'g) (setting forth analysis for determining whether jury charge error requires reversal). If the jury charge error has not been properly preserved by an objection or request for instruction, reversal is required only if the appellant suffered "egregious harm" from the error. *Id.*

Article 38.36(a) of the Texas Code of Criminal Procedure provides:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX. CODE CRIM. PROC. art. 38.36(a).

Williams contends that he sought but did not receive an instruction that the jury could consider his previous relationship with Mitchell. The charge submitted only instructed the jury that it could consider his prior relationship with the deceased complainants, Jailyn Page and Bryce Goddard.

The jury charge stated:

> You are instructed that it is your duty to consider the evidence of all relevant facts and circumstances surrounding the deaths and the previous relationship, if any, existing between the accused and Jailyn Page and the accused and Bryce Goddard together with all relevant facts and circumstances going to show the condition of the mind of the defendant at the time of the alleged offense[.]

Article 38.36(a) only contemplates that the jury consider the relevant facts and circumstances "surrounding *the killing*" and the prior relationship "between the accused and *the deceased*." TEX. CODE CRIM. PROC. art. 38.36(a) (emphasis added). Article 38.36(a) does not contemplate the charge proposed by Williams, which would have allowed the jury to consider his relationship with Mitchell, who was not the complainant and survived the shooting.

On appeal, Williams's relies on *Dixon v. State* to support that the charge should have instructed the jury it could consider his relationship with Mitchell. *See Dixon v. State*, 634 S.W.2d 855, 856–57 (Tex. Crim. App. 1982). The facts of *Dixon* are not analogous to the facts here. In *Dixon*, the Court of Criminal Appeals held that evidence of the accused's prior relationship with his intended victim was admissible to prove the defendant's state of mind at the time of the offense. *Id.* But *Dixon* is a case of transferred intent. Transferred intent does not apply here because the record does not reflect that Mitchell was Williams's intended target. Williams testified that he used deadly force in defense of Hall and that the force was directed at Goddard, who Williams believed posed an immediate threat to Hall. The trial

16

court did not err in declining to include language in the charge that would have instructed the jury it could consider Williams's previous relationship with Mitchell.

We overrule Williams's fourth issue.

## Conclusion

We affirm the trial court's judgment.

Susanna Dokupil
Justice

Panel consists of Justices Guerra, Caughey, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).